## Borough of Economy v. CNA & Firemen's Insurance Company of Newark, New Jersey

David G. Joyce, for plaintiff.
Paul W. Roman, Jr., for defendant CNA.
Gerald J. Hutton, for defendant Firemen's Insurance Company.

WALKO, J., July 29, 1985—Before the court is an action for a declaratory judgment. On September 4, 1984, the Borough of Economy was named as a defendant in a lawsuit intitiated by John and Marian Pipes, no. 1132 of 1984 in the Court of Common Pleas of Beaver County. The borough, upon receipt of the complaint, submitted the claim to Firemen's Insurance Company of Newark, New Jersey and to CNA Insurance Company requesting coverage and defense for the lawsuit. Both insurance companies denied such request. This declaratory judgment action was then commenced against both companies to resolve the coverage question.

The Declaratory Judgments Act, 42 Pa.C.S. §7531 et seq., is broad in its scope and is to be liber-

ally construed but is not without its limitations. Doe v. Johns-Manville Corp., 324 Pa. Super. 469, 473, 471 A.2d 1252 (1984). The act itself provides inter alia that:

"Courts of record, within their respective jurisdiction, shall have the power to declare rights, status and other legal relations whether or not further relief is or could be claimed." 12 Pa.C.S. §7532. Actions for declaratory judgments are proceedings to determine fixed legal rights, not to modify or elucidate judicial decrees or decisions. Doe, supra, at 475.

In seeking declaratory relief, a plaintiff must establish an interest which must be a direct, substantial and present interest, as contrasted with a remote or speculative interest. South Whitehall Township et. al. v. Pennsylvania Department of Transportation, 82 Pa. Commw. 217, 221-222, 475 A.2d 166 (1984). In other words, for declaratory relief to be appropriate, there must be an actual controversy. S. Whitehall Twp. et. al., supra, at 222.

The court has not been provided with stipluated findings of fact, thus we must amass from the oral arguments, pleadings and briefs filed, the following scenario of facts. It appears that the Borough Council of Economy engaged an "insurance broker" in order to purchase an insurance policy for the borough protecting it from any and all liability arising out of accidents, or negligence of its employees and errors or omissions of its officers, staff and employees. Exactly what the borough instructed its "insurance broker" to purchase is an unknown fact. There is absolutely no evidence or stipulation of fact that the borough ever ordered any specific policy that it did not obtain. What in fact was provided to the borough were two policies from defendants Firemens and CNA entitled Comprehensive General Liability

policies. Plaintiff alleges that the policy period of defendant Firemen's is from November 10, 1975 to November 10, 1978 and that the policy period of defendant CNA is from June 1, 1983 to June 1, 1984. By reason of the decision reached in this opinion the time frame of when the alleged negligent act took place and the question of which company's policy was or is in effect become unimportant.

The complaint in the underlying lawsuit against Economy Borough alleges that, on January 13, 1976, plaintiffs John and Marian Pipes entered into an agreement of sale to purchase a certain lot within the Borough of Economy. This agreement was contingent upon a satisfactory percolation test for installation of a septic system.* In April, 1976, defendant Economy Borough, through its employee Paul G. Malinak, a sewage enforcement officer, conducted a soil analysis and percolation test upon the lot in question. This was done pursuant to an application for a sewage disposal system submitted by plaintiffs Pipes. The purpose of this test was to determine whether the land was suitable for a residential septic sewage system that would meet applicable health laws. Apparently the test conducted by the borough's officers proved satisfactory because a permit was issued for this lot providing for the installation of an individual septic tank on April 26, 1976. At this time, plaintiffs concluded the purchase of this lot and recorded the deed delivered to them on May 18, 1976.

On July 30, 1983 plaintiffs, as sellers of the lot in issue, entered into an agreement of sale with buyers. Such agreement was contingent upon the prop-

---

*It provides for such testing when the land being conveyed is not served by public sewage facilities. This test was done pursuant to the Pennsylvania Sewage Facilities Act, Act of January 24, 1966, P.L. 1535.

erty passing the required percolation test. In August 1983 defendant borough, through its sewage enforcement officer David J. McCulloch, conducted a second percolation test. This time the sewage permit was denied as the property failed to pass the test.

Plaintiffs Pipes allege that the first test was negligently and carelessly performed by the employee/agent of the borough and that, as a result, the realty purchased by plaintiffs in reliance on said prior test has been effectively rendered worthless. They also claim damages for the costs of testing the soil and various other costs.

Essentially, the issue presented to the court is to determine from the provisions of the policies issued to the borough whether such activity performed by the borough's employee is covered under said policies.

Both CNA and Firemens deny that the conduct of the agent of Economy Borough falls within the scope of the coverage provided by their insurance policies. Both policies state that:

"The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A.  bodily injury or

B.  property damage

to which this insurance applies, caused by an occurence. . ."

Each defendant claims that the incident complained of, that is, the alleged negligent percolation test performed in April 1976, is not an "occurrence" as defined in the policies. Each policy defines an occurrence as:

"an accident, including continuous or repeated exposure to conditions, which results in bodily inju-

ry or property damage neither expected nor intended from the standpoint of the insured."

Property damage is defined as:

"(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physicially injured or destroyed provided such loss of use is caused by an occurrence during the policy period."

In order for this case to fit within the policy definitions, "property damage" would also have to comprise the diminution of value of the property in question since there was no actual physical injury to the Pipes' property. The alleged negligent act of the Economy Borough employee might then fit within the definition of an "occurrence" or "accident" which resulted in "property damage," since a negligent act is an unintentional or accidental act.

However, we need not determine what exactly the term "property damage" encompasses as each policy contains an express exclusion which puts an end to our inquiry. Each policy exclusion is worded as follows:

*"This insurance does not apply:* (m) to loss of use of tangible property which has not been physically injured or destroyed resulting from . . .

(2) *the failure of* the . . . *work performed by or on behalf of the named insured to meet the level of performance, quality,* fitness or durability *warranted or represented by the named insured.* (Emphasis added.)

Assuming arguendo that this specific case does in fact fit within the definitions of "occurrence" and "property damage," the aforementioned exclusion still expels any possibility of coverage. The exclusion is unambiguous and directly encompasses our

financial situation. That is that the employee of Economy Borough might be found to have failed to meet "the level of performance . . . represented" by Economy Borough when he performed the percolation test of April, 1976.

We are thus constrained, passing solely on the issue of whether the provisions of the insurance policies include or exclude the type of action brought against the borough, to deny the borough's request for summary judgment or judgment on the pleadings, and grant the motion for summary judgment of both defendants.

Perhaps the borough is not without recourse in this case. As the court remarked during oral arguments, without intending to suggest additional litigation in this case, it does appear that there is an area that might be explored to determine whether such all inclusive instructions on the borough's insurance needs were made, and, if made, were they communicated to the then insurance carriers.

For all of the above reasons, we enter the following

### ORDER

And now this July 29, 1985, this court, after consideration of arguments and briefs of counsel, hereby denies plaintiff's motion for judgment on the pleadings or summary judgment and grants defendants' motion for summary judgment. The prothonotary is directed to enter said judgments upon praecipe filed.