471 A.2d 1252

**John DOE and Mary Doe, His Wife, Appellants**

v.

**JOHNS–MANVILLE CORPORATION, Johns-Manville Sales Corp., Fibreboard Corporation, Owens-Corning Fiberglass Corp., Nicolet, Inc., Pittsburgh Corning Corporation, Celotex Corporation, Unarco Industries, Inc., Eagle-Pitcher Industries, Inc., Keene Corporation, Pacor, Inc., Brand Insulations, Inc., Armstrong World Industries, Inc., Amatex Corporation, H.K. Porter, Co., Inc., Southern Textile Corp., A.C. & S., Inc., GAF Corp., Owens-Illinois, Inc., Universal Insulation Company, Forty-Eight Insulation, Inc., Delaware Insulation Co., Crown, Cork & Seal Company, Inc., D.A.R. Industrial Products, Raybestos-Manhattan Inc., Appellees.**

Superior Court of Pennsylvania.

Argued April 25, 1983.

Filed Jan. 27, 1984.

Petition for Allowance of Appeal Denied June 7, 1984.

470

Norman Perlberger, Philadelphia, for appellants.

John M. Toscano, Philadelphia, for appellees.

Before CERCONE, President Judge, and SPAETH, HES-TER, CAVANAUGH, WICKERSHAM, WIEAND and HOFFMAN, JJ.

CAVANAUGH, Judge:

This is an appeal from an order of the common pleas court which sustained preliminary objections to appellants' petition for declaratory relief. Appellants sought a determination by declaratory judgment that the statute of limitations does not begin to run in asbestos related disease cases until the injured person is actually disabled. The court, by grant of preliminary objection, refused to make such a determination and since we agree with this disposition, we affirm of the order of the trial court.

Appellants, John and Mary Doe,[1] assert that the husband appellant has worked with asbestos products since

---

**1.** The appellants have now filed suit in their own names, James and Mary McGee, since they were faced with the running of the statute in the absence of the relief sought herein. *McGee v. Johns-Manville Corp.,* Court of Common Pleas, Philadelphia, February Term, 1982, No. 2288. Since the appellants might still benefit by success in the present appeal we do not see the pendency of the protective action as being a bar to proceeding on this appeal.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ .

1955.[2] In 1980, appellant was advised for the first time that he had a pulmonary condition in the form of calcification of portions of lung tissue which was caused by exposure to asbestos. Appellant describes this condition further as a pleural thickening, the formation of calcified tissue on the pleura, the membranes surrounding the lungs. This condition may be objectively determined in the sense that it is visible on chest x-ray. Appellant admits, however, that the presence of this condition has not caused him any substantial discomfort, nor any significant deficit in lung function or disability. He asserts, however, that his present condition is one that is highly likely to develop into parenchymal asbestosis, which may progress to the stage where it will result in severe disability and, even, death. Further, it is claimed that his present condition heightens his chance of suffering cancer of the lung and other organs. McGee's argument here centers on the two year statute of limitations as it applies to his situation. Specifically, in his Complaint for Declaratory Relief he states:

> 15. Petitioners' seek a declaration from this Court to determine when their cause of action first occurs under the [applicable statute of limitations, 42 Pa.C. S.A. §§ 5502(b) and 5524].

The problem faced by appellant is that given the commencement of the limitation period in April of 1980 when he first learned of his pleural thickening, he might be forced to file his lawsuit (as has occurred) and try his claim when he had no significant medical expense and was not disabled. His dilemma, he contends, is not resolved by the fact that under Pennsylvania law he could seek compensation for possible future related diseases, since appellant feels that his continued good health through the time of trial would likely limit the chances of recovery for future diseases. The solution which McGee seeks in the present suit by way of the Declaratory Judgment Act, 42 Pa.C.S. § 7531 *et seq.*,

---

**2.** The facts as well as the inferences reasonably deductible therefrom are deemed admitted for purposes of considering the preliminary objections. *Gekas v. Shapp,* 469 Pa. 1, 364 A.2d 691 (1976).

is a determination that his cause of action for asbestos related disease does not accrue, and, therefore, the statute of limitations does not begin to run until he becomes *disabled* from his disease.

■ The Declaratory Judgment Act, 42 Pa.C.S. § 7531, *et seq.*, which became effective in Pennsylvania on June 27, 1978 is broad in its scope and is to be liberally construed,[3] but is not without its limitations. In its general provision it states:

Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.

42 Pa.C.S. § 7532.

■ The relief sought here, to construe the applicable statute of limitations for personal injury actions, 42 Pa.C.S. §§ 5502 and 5524, so that the limitations period does not begin to run in an asbestos-disease situation until the injured person is actually disabled, would involve the declaration of rights, status or other legal relationship in contravention to existing law. It would, therefore, render the Declaratory Judgment Act a vehicle for *changing* the law, rather than interpreting it, or defining legal relations. Declaratory judgments are nothing more than judicial searchlights, switched on at the behest of a litigant to illuminate an existing legal right, status or other relation. They may not be used to search out new legal doctrines. Pennsylvania law as it applies to plaintiff's claim is clear. The seminal case was decided in 1959 when our Supreme Court in *Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959) held:

[t]he injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable."

*Ayers v. Morgan, supra,* 397 Pa. at 290, 154 A.2d at 792.

Appellant concedes that in April of 1980 he was advised that he had a pleural thickening ("damage which is physical-

---

**3.** *See* 42 Pa.C.S. § 7541(a).

ly objective") and that it could be identified by chest x-ray ("and ascertainable.") Thus, without more, any attempt to delay the operation of the statute of limitations would involve a change in the law. Moreover, since *Ayers* the law has become more specific as it relates to what are now referred to as creeping disease cases. In *Anthony v. Koppers Co., Inc.*, 284 Pa.Super. 81, 425 A.2d 428 (1980) *rev'd. on other grounds*, 496 Pa. 119, 436 A.2d 181 (1981) our court applied the discovery rule set out in *Ayers* to a case involving the claim of lung cancer resulting from the inhalation of emissions from coke ovens and adopted language from Judge Takiff's common pleas court decision in *Volpe v. Johns-Manville Corp.*, 4 P.C.R. 290 (1980):

> *Ayers'* progeny have struggled primarily with the question of the reasonableness of plaintiff's conduct in attaining the appropriate level of cognitive knowledge which ultimately prompts a timely lawsuit. With the question of "reasonableness" as a constant qualification running through the decisional law, the principle emerges that three independent phases of knowledge must be known or knowable to plaintiff before the limitations period commences: (1) knowledge of the *injury;* (2) knowledge of the *operative* cause of the injury; and (3) knowledge of the *causative relationship* between the injury and the operative conduct. In the typical personal injury case, knowledge of the foregoing elements is gained contemporaneously with the occurrence of the liability creating events and little difficulty is presented in applying the commencement of the statute of limitations period. When time and space intervene between the several levels of knowledge, however, courts have struggled with the application of the articulated legal standard to the facts involved. An analysis of the case law compels the conclusion that when a plaintiff knows or has reason to know of his injury, its operative cause, and the causative relationship to independent occurrences, he possesses as a matter of law, the necessary information to herald a possible tort and hence commence the running of the statutory period.

*Anthony v. Koppers Co., Inc., supra* 284 Pa.Super. at 96–97, 425 A.2d at 436.

Here, it is clear that appellant knows of his injury, the operative cause of the injury and the causal relationship between the injury and the operative conduct. Later, in *Staiano v. Johns Manville Corp.*, 304 Pa.Super. 280, 450 A.2d 681 (1982) the discovery doctrine was applied to a case involving personal injuries sustained as a result of exposure to asbestos products. In *Staiano,* the court also rejected the argument that even if the asbestosis claim was properly dismissed under the statute of limitations, separate claims survived, (A) for the aggravating effects of inhaling asbestos dust for the two years before filing the complaint and, (B) for a different disease (as a result of the exposure) of pleural thickening. The present case does not involve a separate claim for aggravating injuries in the two year period prior to the statute, but it does ask us to declare a separate statute when there are two different disease processes as a result of asbestos exposure. However, *Staiano* disposed of this argument by holding:

> But if we assume that the complaint should read as alleging such a claim, the claim is nevertheless barred, for a new limitation period does not start each time a new disease develops from the same tortious conduct of the defendant.

*Staino v. Johns Manville, supra,* 304 Pa.Superior Ct. at 296, 450 A.2d at 688.

■ Actions for declaratory judgments are proceedings to determine fixed legal rights, not to modify or elucidate judicial decrees or decisions. *See Ladner v. Siegel,* 294 Pa. 368, 144 A. 274 (1928). Here appellant would have the trial court enhance his legal rights which are fixed by decisional law.

■ Thus, we conclude that appellant's request that the trial court grant declaratory relief in the form of a declara-

tion that the statute of limitations does not begin to run until the injured person becomes disabled is actually a request that the court change the law, a power which, under the present circumstances, neither the common pleas nor this court has the power to do.

We, add, however, that appellant's plight does not represent an isolated circumstance. Our Supreme Court has already recognized the extensive burden that asbestos litigation has and will place upon the judicial resources of our Commonwealth. *Pittsburgh Corning Corp. v. Bradley*, 499 Pa. 291, 453 A.2d 314 (1982). Perhaps, even more pertinent is the reaction of the trial courts.

In dealing with the precise dilemma faced by appellant herein, the Honorable Lois Forer of the Court of Common Pleas of Philadelphia has stated:

The failure to acknowledge a separate statute of limitations for a second disease would impel every minimally injured person to rush to court to toll the statute of in the event that he might, as a result of his exposure, suffer another more serious injury. A mildly injured or minimally disabled person may well be satisfied and reasonably compensated under compensation laws. There is no need for such a party to resort to the courts. Both plaintiffs and defendants would be compelled to litigate cases in which the damages are minimal but the expenses of litigation are great. The floodgates of litigation being thus opened would inundate the courts to no useful purpose. Such a plaintiff could not recover damages for an injury not yet sustained unless the probabilities for his contracting such a second disease were more than 50%. Thus an individual such as Faix would be precluded from recovery for his fatal illness if the original action were tried promptly.

*Faix, Admx. v. Johns-Manville Corp.*, No. 88 (94), September Term, 1978, Slip op. at 6–7 (C.P.Phila.)

Judge Forer espouses the adoption of a "second disease" doctrine which would apply a separate statute to each separate and successive injury.[4]

In another recent case, the Honorable Richard B. Klein of the Court of Common Pleas of Philadelphia concluded that under the discovery rule he was required to grant a motion for summary judgment but criticized the applicability of this doctrine to latent disease situation such as are often presented in asbestos cases. Judge Klein stated in urging the adoption of a new rule:

> It is therefore respectfully suggested that Pennsylvania join other jurisdictions to review the proper application of tort principles to the latent disease situation. This review should reconsider the Statute of Limitations question and go further to review other issues of the asbestos litigation.
>
> The review is necessary because, to put it bluntly, the present system just is not working. The civil court calendar in Philadelphia cannot cope with the volume of over 3,000 asbestos cases that have been filed. Results of jury verdicts are capricious and uncertain. Sick people and people who have died a terrible death from asbestos are being turned away from the courts, while people with minimal injuries who may *never* suffer severe asbestos disease are being awarded hundreds of thousands of dollars, and even in excess of a million dollars.
>
> The asbestos litigation often resembles the casinos sixty miles east of Philadelphia more than a courtroom procedure. And just as the casinos are the winners in Atlantic City, the lawyers are the winners in asbestos litigation since the costs of litigation far exceed benefits paid to claimants.

4. The "second disease" theory suggests that the "creeping disease" appellation may be inaccurate or even misleading when applied to asbestos disease cases. It appears that the medical picture presented by these cases is not one of slow but steady development of a diseased state by reasonably predictable progression.

The Philadelphia court system has focused a great portion of its civil resources on the asbestos litigation, devised methods of disposition of cases that have won national acclaim, and has processed record numbers of major civil cases. But the new cases are filed faster than any court system of Philadelphia's size can dispose of them.

Ideally, the federal or state legislatures should address the problem. But even if legislation is enacted some time in the future, it may not solve the problems of the thousands of cases which have already been filed.

Since legislative remedies seem remote, the courts should recognize that application of traditional tort law to the "creeping disease" situation is often like trying to fit a square peg into a round hole.

*Blue v. Johns-Manville Corp.*, No. 4001 (127) October Term 1978, Slip op. at 14–15 (C.P.Phila. October 12, 1983).

We quote from these cases in order to demonstrate our awareness that appellate disposition of this issue is earnestly sought by judges who deal with the daily problems of the mass of asbestos litigation. For the reasons stated, this case does not present the opportunity to address the problem. We note, parenthetically, that both cases, unlike the present case, are decisions which were based upon developed records.

Order affirmed.

SPAETH, and WIEAND, JJ., concur in the result.