565 A.2d 377

**Allen E. WRIGHT, et al.**

**v.**

**EAGLE–PICHER INDUSTRIES, INC., et al.**

**No. 215, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Nov. 6, 1989.

Patricia J. Kasputys (Peter G. Angelos and Thomas S. Basham, on the brief), Baltimore, for appellants.

Robert A. Suls (Michael B. Mann, and Mann & Whelley, P.A., on the brief), Towson, for appellee, Eagle Picher.

John J. Nagle, III, and Power & Mosner, P.A., on the brief, Towson, for appellee, MCIC, Inc.

Katherine Thurlow, Paul W. Nolan, and Thurlow & Nolan, P.A., on the brief, Baltimore, for Wallace Insulation, Inc.

Argued before ROSALYN B. BELL, FISCHER and CATHELL, JJ.

ROSALYN B. BELL, Judge.

This case arose from a tort action brought in the Circuit Court for Baltimore County by four men, Allen E. Wright, Vincent J. Bonadio, Charles K. Debrick and William J. Becker, Jr. (appellants) to recover for damages from asbestosis or asbestos-related lung diseases. Joyce Wright, Mildred Bonadio and Millicent Becker brought joint actions with their husbands for loss of consortium. The defendants at trial were Eagle–Picher Industries, Inc., MCIC, Inc. (f/k/a McCormick Asbestos Company), Wallace Insulation (appellees) and Raymark Industries, Inc.[1] Appellees are

---

1. An involuntary petition in bankruptcy was filed against Raymark Industries, Inc. under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* (1988). Pursuant to 11 U.S.C. § 362(a)(1) (1988), the continuation of all judicial proceedings against Raymark, including the present controversy, is stayed. Section 362(a) does not apply to codefendants in pending litigation. See *Williford v. Armstrong World Indust., Inc.,* 715 F.2d 124, 127 (4th Cir.1983). Thus there is no problem with resolving this case as it relates to the other defendants.

The instant case is distinguishable from *Starfish Condominium Association v. Yorkridge Service Co.,* 292 Md. 557, 440 A.2d 373 (1982). In *Starfish,* the Court of Appeals held that, where one of the defendants petitioned for bankruptcy before the trial, "a stay, under Bankruptcy Rule 401(a) [now 11 U.S.C. 362(a)], of proceedings against one of multiple defendants does not thereby render appealable judgments entered on claims asserted against the remaining defendants, in the absence of a Rule 605 [now Rule 2–602] determination and direction." *Starfish,* 292 Md. at 566, 440 A.2d 373.

In the instant case, judgment was entered on April 28, 1988 in favor of all the defendants. On February 10, 1989, an involuntary Petition in Bankruptcy was filed against Raymark. On June 15, 1989, this Court stayed all further proceedings as to Raymark alone, pending further order of the United States Bankruptcy Court. This case is unlike *Starfish* in that there was no issue as to when bankruptcy occurred. Bankruptcy, in the present case, arose after final judgment was entered and the appeal noted, hence, there was no need for a Rule 2–602 certification.

manufacturers, suppliers and installers of insulation products containing asbestos.

The trial was before a jury which determined in a special verdict that appellants did not suffer from asbestosis. Judgment was entered in favor of appellees. Appellants' motion for a new trial was denied.

On appeal, appellants contend:

—The trial court invaded the province of the jury by its instruction, despite conflicting competent medical evidence, that the medical condition of pleural plaques was not a compensable injury.

—The exclusion of relevant evidence bearing on the reasonableness of appellants' fear of cancer was error.

—The exclusion of relevant evidence, establishing the need for and expenses of future medical monitoring to detect cancer, was error.

—The exclusion of evidence of appellees', the medical and scientific community's, and the asbestos industry's knowledge by 1947 of the causal connection between asbestos exposure and cancer was error.

Because we hold that there was no error in the jury instructions and affirm, we need not and will not address the three remaining issues which relate to damages.

## MOTION TO DISMISS

■ Initially, we must address appellees' motion to dismiss this appeal. Pursuant to Rule 8–603(c), appellees have included in their brief a motion to dismiss based on Rule 8–602(a)(10), which provides that the Court may dismiss an appeal if the case has become moot. Appellees contend that the issues presented on appeal are abstract questions of law which, when resolved, would have no impact on the judgments in these cases. They urge that since none of the issues presented by appellants assert error in the jury's finding that appellants did not have asbestosis, this appeal should be dismissed. They are mistaken.

Generally, appellate courts will not decide academic or moot questions. Questions tend to become moot as a result of a change in a party's position. *State v. Siegel,* 13 Md.App. 444, 471, 285 A.2d 671 (1971), *aff'd,* 266 Md. 256, 292 A.2d 86 (1972). There has been no change in the parties' position here. In addition, the Court of Appeals has held that "[a] question is moot if, at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide." *Attorney General of the State of Maryland v. Anne Arundel County School Bus Contractors Ass'n, Inc.,* 286 Md. 324, 327, 407 A.2d 749 (1979). There is still a disagreement between the parties in the present case, as is demonstrated by appellants' claims of errors by the trial court.

Moreover, we disagree with appellees' assertion that appellants' complaints are abstract questions which will not affect the judgment entered by the trial court. As appellants point out, they are not challenging the jury verdict; rather, they contest the jury instruction regarding pleural plaques which they believe had an impact upon the result. We agree with appellants. Had we held that the trial court erred in its jury instruction, the case would have been remanded for a new trial and the verdict could well have changed. Thus, we deny appellees' motion to dismiss.

## JURY INSTRUCTIONS

█ Appellants assign error to the trial judge's instruction to the jury that the medical condition known as pleural plaques [2] alone is not a compensable injury. They argue that the trial judge invaded the province of the jury by telling it, despite the presentation of conflicting expert medical testimony, that the exhibition of pleural plaques

---

**2.** Pleural plaques are discrete lesions or places of thickening which occur on the pleurae. The pleurae are both the inner and outer lining of the lung. Pleural plaques are the most common manifestation of exposure to asbestos. Although pleural plaques do not automatically implicate asbestosis, those people with asbestosis usually do have pleural plaques.

alone is not compensable.[3] They also assert that the jury instructions confused and misled the jury, and consequently, they were improper.

—Credibility of Witnesses and Weight of Testimony—

Appellants rely on *Singleton v. Roman,* 195 Md. 241, 246–47, 72 A.2d 705 (1950), for the proposition that it is the province of the jury to determine issues of fact. *Singleton* also explains that the role of the trial judge is to "state the law to the jury." *Singleton,* 195 Md. at 246, 72 A.2d 705. In *Singleton,* the trial judge instructed the jury to disregard the testimony of a State trooper stating there was a very slight odor of alcohol on defendant's breath. *Singleton,* 195 Md. at 246, 72 A.2d 705. The Court of Appeals held that the instruction was improper since it invaded the jury's evaluation of the defendant's level of intoxication which was relevant to determining his negligence.

In the case at bar, Stuart L. Jacobs, M.D., one of appellants' expert witnesses, testified that pleural thickening and pleural plaques are abnormal conditions of the lung. He testified as follows:

"BY [APPELLANTS' ATTORNEY]:

"Q. So we get more specific here, the fibrosis that you are talking about when it is caused by asbestos, does that have a name, that particular type?

"A. That is called asbestosis. The term asbestosis is generally meant to be the fibrosis in the lung itself.

"It is a matter of nomenclature. Some experts in asbestos lung disease use the term asbestosis to include

---

**3.** The trial court instructed the jury, following a general damages instruction:

"You have heard testimony that some of these [appellants] may have a condition known as pleural plaques. You are, however, instructed that even if you find that one or more of the [appellants] has the condition known as pleural plaques, there is no evidence that that condition by itself causes any injury, impairment or disability to the [appellants], and, therefore, you may not award any damages to any [appellant] solely because of that condition."

all of the fibrotic manifestations, including pleural plaques. Others use the word fibrosis just for the parenchyma. It is a matter of just being suscinct [sic] when you define your terms.

"Q. Well, just so the jury will know what language you are speaking, when you speak of asbestosis what are you inferring or what is your meaning for it?

"A. Well, I prefer to think of it as the entire picture of fibrosis in the parenchyma, fibrosis in the pleura. Dr. Sellikoff, who is one of the premiere experts, uses that terminology. Other investigators and the ATS [American Thoracic Society], they use asbestosis to mean specifically the fibrosis in the lungs. So, it is just a matter of defining your terms.

"Q. Well, those who use the term asbestosis to include the pleural portion of the scarring or fibrosis, how do they differentiate? How, if at all, do you differentiate pleural scarring from lung scarring?

"A. Well, I would then use the term pleural asbestosis or parenchymal asbestosis."

Paul Sorrell Wheeler, M.D., one of appellees' medical experts, testified:

"[A]sbestosis, in the strictest sense relates to pneumoconiosis. Pneumoconiosis by definition is lung fibrosis. There was a time, particularly early in the 1980's, when a great many individuals were using the term, asbestosis, to refer to pleural plaques, which were a completely different entity involving not the lung but the outer later [sic] pleura."

Applying *Singleton*, appellants charge that since there was conflicting testimony regarding the meaning of "asbestosis," (*i.e.*, whether it includes fibrosis of the pleurae or is limited to fibrosis of the pulmonary parenchyma, the air sacks which form the lung), the jury should have been free to arrive at its own conclusion. While we agree, the pleural plaques instruction did not prevent both definitions of asbestosis from being argued to the jury. In fact, counsel for appellants opened his closing argument with this statement:

"You received an instruction about not awarding money damages for pleural plaques alone, but recall Dr. Jacobs and Dr. Davidson telling you that the pleural plaques indicate, in their medical opinion, that there is fibrosis in the lungs and that is a compensable disease and that's what we are seeking...."

Further, appellants assert that there was differing testimony concerning whether pleural plaques or pleural thickening[4] indicate underlying fibrosis of the lung. Again, we agree, but fail to see how the pleural plaques instruction prevented the jury from considering the evidence tending to support a finding that appellants had asbestosis.

—The Current Medical Literature—

A review of the articles in medical journals reveals that pleural plaques are frequently discussed under the topic of "benign pleural disorders,"[5] which would appear to corroborate the trial court's jury instruction. A recent article which reviews numerous studies of the effects of benign, asbestos-related abnormalities exemplifies the current medical controversy concerning pleural plaques. *See* R. Jones, et al., "The radiographic pleural abnormalities in asbestos exposure: Relationship to physiologic abnormalities," *Journal of Thoracic Imaging*, October 1988, vol. 3, # 4:57. In this article, the authors conclude:

---

**4.** The definition and significance of diffuse pleural thickening is still being established. Gefter and Connant, "Issues and Controversies in the Plain-film Diagnosis of Asbestos-related Disorders in the Chest," *Journal of Thoracic Imaging*, Oct. 1988, vol. 3, # 4:11, 19. For our purposes, however, "pleural thickening" means a thickening of the pleurae spreading out over the chest wall, as opposed to the localized thickening associated with pleural plaques.

**5.** *See e.g.* Mossman and Gee, "Asbestos–Related Diseases," *New England Journal of Medicine*, June 29, 1989, vol. 320 # 6:1721, 1726; Dunn, "Asbestos and the Lung," *Chest*, June 1989, vol. 95 # 6:1304, 1306; American Thoracic Society, "The Diagnosis of Nonmalignant Diseases Related to Asbestos," *American Review of Respiratory Disease*, 1986, vol. 134:363. "Benign" is defined as "of a gentle disposition," "of a mild type or character that does not threaten health or life." *Webster's Ninth New Collegiate Dictionary* (1985).

"Pleural plaques, as an isolated radiographic finding, do not by themselves produce clinically significant reductions in pulmonary function.

"In groups of persons, plaques are probably associated with small reductions in mean pulmonary function after the study has controlled for other influencing variables. Most of the published studies of the effects of plaques, however, have not adequately controlled for the effects of other factors on pulmonary function."

Jones, at 65.

Whether pleural plaques are, in and of themselves, an injury which impair an individual's health and merit compensation is on the cutting edge of medical knowledge. Generally, this uncertainty would prohibit the judge from invading the province of the jury by instructing them that the existence of pleural plaques alone was not compensable. In the instant case, however, appellants failed to produce any evidence of injuries suffered by appellants solely as a result of pleural plaques. In fact, appellants' counsel responded to the court's question, "What evidence is there that pleural plaques cause injury?" by saying:

"The evidence is that they do not cause impairment. That they are an unnatural condition caused by the inhalation of asbestos fibers. They are a marker of asbestosis inhalation."

To support his assertion that plaques are compensable he later stated, "You cannot separate the plaque from the damage to the lung itself." Appellants argued that pleural plaques are part of asbestosis, and are compensable on that basis. The jury, however, did not find asbestosis to be present and therefore could not have compensated appellants for pleural plaques. We hold there was no error in the pleural plaques instruction.

### —Confusing and Misleading—

■ Appellants also urge that the pleural plaques instruction was improper because it tended to confuse or

mislead the jury. *Wood v. Johnson,* 242 Md. 446, 456, 219 A.2d 231 (1966).

As plaintiffs below, appellants had the burden of proving by a preponderance of the evidence that each male appellant sustained an injury. They state that an injury is "any wrong or damage done to another, either in his person, rights, reputation or property." *Black's Law Dictionary* 706 (5th ed. 1979). An injury, they continue, is "*any* impairment of the physical condition of the body." Restatement (Second) of Torts § 905 comment b (1979) (emphasis added). But, they also assert that compensatory damages can be awarded for bodily harm even in the absence of physical impairment. Cases awarding damages, despite the lack of physical impairment, occur in torts of intentional or negligent misrepresentation or libel and the concomitant humiliation, degradation and damage to a plaintiff's reputation. *See* Restatement (Second) of Torts § 905 app. at comment b (1982). These torts do not require physical harm. The underlying wrong is emotional. Product liability suits, however, like the case at bar, do require physical injury.

Appellants assert error from the instruction to the jury. They contend the jury was confused and precluded from considering evidence supporting a finding that appellants had asbestosis. This is patently incorrect. The jury was not confused. It was permitted to consider all the evidence presented by appellants. As we have already stated, appellants failed to present any testimony indicating that pleural plaques caused any injury, symptom or functional impairment to any one of appellants. The jury found that appellants did not have asbestosis. In order to have reached this conclusion, the jury must have determined there was no injury, meaning either that appellants only had pleural plaques, which are not subsumed in the definition of asbestosis (thus favoring appellees' definition of asbestosis), or that even under appellants' inclusion of pleural plaques in the definition, appellants did not have asbestosis.

There is no doubt that a better special verdict sheet would have asked the jury to determine whether appellants had pleural plaques and whether pleural plaques were the equivalent of asbestosis. As submitted, however, the jury merely needed to determine whether appellants had asbestosis. Appellants, however, did not object to the verdict sheet and have waived their right to have the jury determine whether they had other asbestos-related diseases. Rule 2–522(c). Appellants were well aware of the impact of the pleural plaques instruction; at oral argument they stated that the instruction prevented them from arguing that asbestosis included pleural plaques. Unfortunately, their failure to object to the special verdict sheet and appellate jurisprudence leaves this Court with no choice but to affirm the judgment entered on the jury's verdict.

Would it have been error for the trial court to instruct the jury that pleural plaques are asbestosis? Based on the evidence presented, yes. But this did not occur. The jury could have returned a verdict for appellants had it determined that appellants suffered from asbestosis. The jury found that none of appellants had asbestosis. Thus, under these circumstances, we hold that the instruction regarding pleural plaques did not affect the verdict.

MOTION TO DISMISS DENIED.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.