632 A.2d 880

William and Paula GIFFEAR, Appellants,

v.

JOHNS–MANVILLE CORPORATION, Pacor, Inc., Eagle–Picher Industries, Unarco Industries, Inc., Keene Corporation, Raybestos–Manhattan, Inc., Celotex Corporation, Southern Textile Company, J.P. Stevens Company, Garlock, Inc., Owens–Illinois Glass Company, Fibreboard Corporation, GAF Corporation,

v.

48 INSULATIONS, Nicolet, Inc., Pittsburgh Corning Corporation, Armstrong World Industries, Inc., H.K. Porter Company, Amatex, Inc., Owens–Corning Fiberglas Corporation.

Superior Court of Pennsylvania.

Argued June 7, 1993.

Filed Sept. 16, 1993.

328

Steven J. Cooperstein, Philadelphia, for appellants.

Richard T. Wentley, Pittsburgh, for appellee Fibreboard.

James F. Hammill, appellee, pro se.

Before ROWLEY, President Judge, and WIEAND, CIRILLO, DEL SOLE, TAMILIA, KELLY, POPOVICH, HUDOCK and FORD ELLIOTT, JJ.

CIRILLO, Judge.

William and Paula Giffear (the Giffears) appeal from an order entered in the Court of Common Pleas of Philadelphia County granting judgment notwithstanding the verdict (j.n.o.v.) in favor of appellees Keene Corporation and Fibreboard Corporation (Keene and Fibreboard). We affirm.

The Giffears instituted this action seeking damages for physical injuries and for fear and increased risk of cancer arising out of Mr. Giffear's occupational exposure to asbestos. All but three of the non-bankrupt defendants settled with Mr.

Giffear. Trial against the remaining defendants, Fibreboard, Keene and Owens–Corning Fiberglas Corporation (a third party defendant),[1] was held in reverse bifurcated form; that is, the first phase of trial concerned solely the issue of damages.

The evidence at trial established that Mr. Giffear's initial exposure to asbestos occurred in 1964, when Mr. Giffear began service in the United States Navy. Mr. Giffear testified that for the next four years, he was exposed to asbestos products virtually every day for a period of three to four hours. After serving in the military, Mr. Giffear spent approximately ten years working as a plumber and was exposed to asbestos two to three times per week. In 1980, Mr. Giffear began work as a pipefitter in the Philadelphia Naval Shipyard. While there, he received an annual medical checkup and, in 1982, was told that he had pleural disease. Mr. Giffear was thirty-five years old at the time of this diagnosis and was told that his asbestos exposure could lead to cancer.

At trial, Mr. Giffear's medical expert, Dr. William Fineman, testified that Mr. Giffear's chest x-rays revealed extensive pleural thickening and plaque formation. Dr. Fineman was unable, however, to identify any clinical physiologic impairment in Mr. Giffear as a result of this diagnosis. In other words, Dr. Fineman could not attribute any physical symptoms to the pleural thickening. Furthermore, Dr. Fineman observed no change in the extent of the pleural thickening in a series of Mr. Giffear's x-rays spanning ten years. Dr. Fineman opined that, based on Mr. Giffear's asbestos exposure, Mr. Giffear is five times as likely to contract lung cancer as he would have been had he never been exposed to asbestos and, further, that his risk of mesothelioma had increased by a factor of three-hundred.

Keene and Fibreboard did not dispute that Mr. Giffear had some asbestos-related pleural thickening, although they did dispute the severity of such thickening. Specifically, Keene's and Fibreboard's expert, Dr. Alan Pope, testified that Mr.

1. Owens–Corning Fiberglas Corporation settled with the Giffears after the verdict.

Giffear's pleural thickening was mild and, while pleural changes had progressed in the period of 1980 through 1983, the thickening had since stabilized. Dr. Pope, like Dr. Fineman, opined that the pleural thickening had no physical effect on Mr. Giffear. Finally, Dr. Pope disputed Dr. Fineman's testimony that Mr. Giffear's asbestos exposure left him with a five times increased risk of lung cancer. According to Dr. Pope, Mr. Giffear's exposure made him only twice as likely to get lung cancer. Dr. Pope did not dispute Dr. Fineman's testimony regarding Mr. Giffear's increased risk of mesothelioma.

At the conclusion of the damages phase of trial, the court instructed the jury, at Keene's and Fibreboard's request, that the jury must determine whether Mr. Giffear had suffered a compensable injury. Additionally, the court instructed the jury that if it decided that Mr. Giffear had *not* sustained compensable injury, he would be entitled to bring another lawsuit should he develop an asbestos-related medical problem in the future. Because Mr. Giffear was also seeking recovery for increased risk and fear of cancer, the jury was additionally instructed that if it *did* find that Mr. Giffear had sustained a compensable injury, that is to say, a condition which caused him harm, the amount of damages must adequately compensate him for all harm he has sustained in the past and might sustain in the future; he would, in this case, not be entitled to start another lawsuit for future medical problems.[2] In accordance with its instructions, the court submitted to the jury the following interrogatory on the verdict sheet: "[I]s [Mr. Giffear's] pleural thickening or pleural plaques an asbestos-related condition or disease allowing him to receive compensa-

**2.** The jury instruction rendered here was essentially identical to the jury instruction approved by the majority in *Manzi v. H.K. Porter Co.*, 402 Pa.Super. 595, 587 A.2d 778 (1991), *appeal denied,* 530 Pa. 644, 607 A.2d 254 (1992). The instruction in *Manzi,* which provided for a second action if an asbestos injury was found to be non-compensable, significantly eroded the prior rigid rule limiting asbestos plaintiffs to a single lawsuit. Following the reasoning initiated in *Manzi,* this court en banc recently made the explicit statement that Pennsylvania has now joined the majority of jurisdictions which allow separate actions for separate asbestos-related injuries. *See Marinari v. Asbestos Corp., Ltd.,* 417 Pa.Super 440, 612 A.2d 1021 (1992), discussed *infra.*

tion?"   The jury answered that question in the affirmative and awarded Mr. Giffear damages in the amount of $300,000.00.[3]

Post-trial motions were filed and the trial court, after oral argument, granted Keene's and Fibreboard's motion for j.n.o.v.   Judge Hill's opinion stated that there was "no medical testimony in either case linking any symptoms, illness or impairment of any sort to the pleural thickening allegedly suffered by [Mr. Giffear]."   As a result, Judge Hill concluded that pleural thickening did not constitute a compensable injury.

The Giffears appealed and ask us to consider whether the trial court erred in granting the j.n.o.v.   Specifically, the Giffears assert that Mr. Giffear suffered compensable physical injury and an increased risk and fear of cancer as a result of his asbestos exposure.[4]

**3.**   On the issue of liability, the matter was tried without a jury, and the trial was conducted by stipulation.   The trial court found Keene and Fibreboard liable for one-eighth (⅛) of the verdict.

**4.**   At this point we find it necessary to address the concern enunciated in the concurring opinions authored by Judges Del Sole and Wieand regarding the issue surrounding Mr. Giffear's asymptomatic pleural thickening.   Both concurring opinons conclude that the issue of whether asymptomatic pleural thickening is a compensable injury is not necessary to resolve the instant case (Del Sole, J., concurring) and/or should be left for another day (Wieand, J., concurring).   While the Giffears have stated their issue in the broadest of terms (*i.e.* Did the trial court err in granting j.n.o.v.?), it is clear from both their original appellate brief and their brief on reargument en banc that they raise two separate issues, one being whether asymptomatic pleural thickening, in and of itself, is a compensable injury.

In their original appellate brief, the Giffears' first paragraph of the argument section squarely confronts this issue.   Responding to the trial court's decision, the Giffears begin their argument with the following: "According to the court, asymptomatic pleural disease is, as a matter of law, not a compensable injury.   This ruling flies in the face of well-established Pennsylvania law."   The Giffears' assertions in support of this statement follow.   Similarly, in their reargument en banc brief, the Giffears have labeled the first portion of the argument section of the brief as follows: *A.   Pleural Thickening Is An Injury Giving Rise To A Cause Of Action.*   Clearly, this issue had to be addressed.

Additionally, the issue was obviously a basis for the trial court's decision to enter the j.n.o.v., as was unequivocally revealed in Judge Hill's trial court opinion:

The issue of whether asymptomatic pleural thickening constitutes a compensable injury under Pennsylvania law was recently addressed

A j.n.o.v. may be entered only in a clear case where the facts are such that no two reasonable persons can fail to agree that the verdict was improper. *Mitzelfelt v. Kamrin,* 526 Pa. 54, 61, 584 A.2d 888, 891 (1990); *Lira v. Albert Einstein Medical Center,* 384 Pa.Super. 503, 508, 559 A.2d 550, 552 (1989), *appeal denied,* 527 Pa. 635, 592 A.2d 1302 (1990). A reviewing court must consider the evidence, as well as all reasonable inferences which may be drawn therefrom, in the light most favorable to the verdict winner, in this case the Giffears. *Mitzelfelt, supra; Lira, supra.*

In their appellate reply brief the Giffears argue that this court's recent en banc decision in *Marinari v. Asbestos Corp., Ltd.,* 417 Pa.Super. 440, 612 A.2d 1021 (1992) serves as an adequate basis for reversal of Keene's and Fibreboard's j.n.o.v. In making this assertion, the Giffears refer to the following language:

The physiologic changes evidenced by pleural thickening are a clear indication that damage which is objective and ascertainable has occurred to tissues in the thoracic cavity. *Hence, we conclude that pleural thickening, even when asymptomatic, is an injury which gives rise to a cause of action.*

*Id.,* 417 Pa.Super. at 454, 612 A.2d at 1028 (emphasis added). Taken out of context, this passage appears to be the the holding of *Marinari;* it is not, however, and we are therefore not bound to follow such language. Rather, the sole issue presented in *Marinari* was whether Pennsylvania, in the context of asbestos actions, should adopt a "separate disease rule." In deciding this question, this court considered the

by a Common Pleas Court sitting en banc ... in the case of *John Czekaj and Lorraine Czekaj v. Johns–Manville* [citation omitted]. As the instant case is factually similar to *Czekaj,* this court feels it must be guided by the holding in *Czekaj* in which the undersigned participated as a member of the court en banc.

The question of whether asymptomatic pleural thickening constitutes a compensable injury under Pennsylvania law is an issue that is clearly confronting this court under the facts of this case. In fact, we find it difficult to imagine a more appropriate set of circumstances in which to address the arguments surrounding this complicated question than those we are faced with today.

following facts. As a result of occupational asbestos exposure, Mr. Marinari discovered that he had pleural thickening. Since Marinari was not, however, experiencing any discernible impairment of his lung function, he chose not to pursue an action to recover damages for the pleural thickening. Years later, Marinari was diagnosed with lung cancer. The trial court was constrained to find that the cancer claim had been barred by the statute of limitations, in light of the fact that Marinari had discovered the pleural thickening years before. In deciding that Pennsylvania should observe a "separate disease rule," this court specifically held that a "[p]laintiff's discovery of a nonmalignant, asbestos related lung pathology, whether or not accompanied by clinical symptoms of impaired pulmonary function, does not trigger the statute of limitations with respect to an action for a later, separately diagnosed, disease of lung cancer."[5] *Id.* 417 Pa.Super. at 442, 612 A.2d at 1022. The question of whether to label asymptomatic pleural thickening as an "injury" constituting a "cause of action" was not before the court in *Marinari;* in fact, the action for asymptomatic pleural thickening was waived in that case. *See id.,* 417 Pa.Super. at 454, 612 A.2d at 1028 (in failing to file an action for pleural thickening within the two year statute of limitations period, the decedent waived only the cause of action for pleural thickening; the action for cancer was not barred). In light of the foregoing, we conclude that we are not constrained to follow the *Marinari* court's characterization, in dictum, of asymptomatic pleural thickening as an injury giving rise to a cause of action.[6]

5. The holding in *Marinari* represents a sharp break from the previous law, which required plaintiffs in Pennsylvania, once informed of pleural thickening, to act within the applicable statute of limitations period to make a claim for an asymptomatic condition and also for any and all predictable later diseases and/or injuries related to asbestos exposure. *Marinari,* 417 Pa.Super. at 448–49, 612 A.2d at 1025.

6. According to *Black's Law Dictionary,* "dictum," is generally used as an abbreviated form of "obiter dictum," or "a remark by the way." To elaborate, it is described as

[A]n observation or remark made by a judge in pronouncing an opinion upon a cause, concerning some rule, principle, or application of law, or the solution of a question suggested by the case at bar, but not necessarily involved in the case or essential to its determina-

■ After careful consideration we hold, as a matter of law, that pleural thickening, absent disabling consequences or manifest physical symptoms, is a non-compensable injury and is therefore not a cognizable claim in the Commonwealth. In reaching this conclusion, we begin with a more thorough explanation of the pleural thickening condition itself. Asbestos-related pleural thickening is, basically, the formation of calcified tissue on the membranes surrounding the lungs; such condition may be objectively determined in the sense that it shows up on an x-ray. *Doe v. Johns–Manville Corp.*, 324 Pa.Super. 469, 472, 471 A.2d 1252, 1253 (1984) (en banc). Pleural thickening may occur independent of or in conjunction with asbestosis. *Marinari, supra,* quoting Mansfield, *Asbestos: The Cases and the Insurance Problem,* 15 Forum 860, 861–64 (1980). When the pleural thickening is asymptomatic, as in Mr. Giffear's case, plaintiffs are able to lead active, normal lives, with no pain or suffering, no loss of an organ function, and no disfigurement due to scarring. *See Marinari,* 417 Pa.Super. at 448, 612 A.2d at 1025; *In re Hawaii Federal Asbestos Cases,* 734 F.Supp. 1563, 1567 (D.Haw.1990).

While the Pennsylvania state appellate courts have recited much dictum regarding the subject of compensable injury in the context of asbestos litigation, there has not been an occasion, until now, to precisely confront the issue of whether asymptomatic pleural thickening constitutes a cognizable cause of action, i.e., a compensable injury under Pennsylvania law.

One of the most frequently cited cases by Pennsylvania courts attempting to define "injury" is *Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959). The Giffears point to the well recognized holding in *Ayers* in support of their position that

tion.... Statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand are obiter dicta, and lack the force of adjudication.

*Black's Law Dictionary* 409 (5th ed. 1979). *See also Stellwagon v. Pyle,* 390 Pa. 17, 133 A.2d 819 (1957) (language in judicial opinion going beyond issue decided is considered dictum); *O'Neill v. Metropolitan Life Ins. Co.,* 345 Pa. 232, 26 A.2d 898 (1942) (statement of court on an issue not raised is dictum).

Mr. Giffear's pleural thickening is a compensable injury: "[I]njury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable." *Id.* at 290, 154 A.2d at 792. We initially point out that the *Ayers* holding refers to a determination of what triggers the statute of limitations. When the *Ayers* holding is read in its intended context, that is, defining "injury" for purposes of allowing the statutory period to run, it has been interpreted correctly. It is an entirely different and, we believe, incorrect interpretation to read the above-quoted *Ayers* passage to support the proposition that once an x-ray reveals pleural thickening, a plaintiff has automatically been "injured" in the *legal* sense, thus entitling him or her to bring an action for damages. While it is true that Mr. Giffear's x-rays evidenced a physical and ascertainable change in the condition of his lung lining, to allow this alone to constitute a claim for a compensable injury simply does not conform to the established principles of Pennsylvania tort law.[7] The legal and medical realities of a

7. Mr. Giffear sought recovery against Fibreboard and Keene under several theories of liability; such theories allow recovery for physical harm to the user or consumer under certain conditions. *See* Restatement (Second) of Torts § 402A. The Restatement makes the following distinctions between "injury," "harm," and "physical harm:"

> **§ 7. Injury and Harm**
> **(1) The word "injury" is used throughout the Restatement of this Subject to denote the invasion of any legally protected interest of another.**
> **(2) The word "harm" is used throughout the Restatement of this Subject to denote the existence of loss or detriment in fact of any kind to a person resulting from any cause.**
> **(3) The words "physical harm" are used throughout the Restatement of this Subject to denote the physical impairment of the human body, or of land or chattels.**

*Restatement (Second) of Torts*, § 7. "Injury" denotes an invasion of a legally protected interest which, if it is the legal result of a tortious act, entitles one so injured to maintain an action in tort. *Id.*, comment a. "Harm" is carefully distinguished from "injury."

> "Harm" implies a loss or detriment to a person, and not a mere change or alteration in some physical person, object, or thing. Physical changes or alterations may be either beneficial, detrimental, or of no consequence to a person. In so far as physical changes have a detrimental effect on a person, that person suffers harm.

*Id.*, comment b.

These distinctions are important in understanding the Giffears' failure to show a compensable harm suffered by Mr. Giffear. Mr. Giffear

diagnosis of pleural thickening *unaccompanied by* discernible physical symptoms or functional impairment cannot justifiably give rise to an action for damages.

Before Pennsylvania's adoption of the separate disease rule, cases that did indirectly address what constitutes "injury," like the *Ayers* decision, did so within the confines of a statute of limitations issue under the strict "single disease rule." Thus, in statute of limitations cases, pleural thickening, under the one disease rule, was considered an "injury" because it indicated a condition used for purposes of initiating the limitations period.[8] Consequently, an "injury" for purposes of triggering the statute of limitations, and an "injury" for purposes of recovering damages for bodily harm can be distinguished. As *Marinari* has made clear, a plaintiff's discovery of pleural thickening no longer launches the running of the statute of limitations for all present and future asbestos-related injuries; rather, a claim for each asbestos-related injury may be brought separately. This being the case, plaintiffs no longer have a valid reason to bring a lawsuit for asymptomatic pleural thickening. Absent evidence of reduced physiological functions, we can find no basis on which to award damages to a plaintiff who has been diagnosed with pleural thickening, especially given the fact that, if the asymptomatic pleural thickening would lead to a clear asbestos-related inju-

has suffered no detrimental effects as a result of his asbestos exposure and, therefore, no harm. While Mr. Giffear's lungs may have been "injured" without being "harmed," there is no rule of law that gives a person with an actionable injury the right to recover damages.

8. *See Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 471 A.2d 493 (1984) (en banc) (while acknowledging differences between pleural thickening and asbestosis, court nonetheless held that a second injury or complication arising from an original tortious act does not give rise to a separate cause of action); *Doe v. Johns–Manville Corp.*, 324 Pa.Super. 469, 471 A.2d 1252 (1984) (en banc) (plaintiff diagnosed with pleural thickening seeking declaratory relief in the form of a declaration that statute of limitations does not begin to run until plaintiff is actually disabled, is something the law does not permit at this time); *Howell v. Celotex Corp.*, 904 F.2d 3 (3d Cir.Pa.1990) (faced with issue of whether pleural thickening amounts to a compensable injury under Pennsylvania law, court recognizes that Pennsylvania has not yet ruled on this issue and states that such a question remains a factual one).

ry (asbestosis, lung cancer or mesothelioma), the plaintiff could then bring an action at that time. *Marinari, supra.*

In reaching our determination that asymptomatic pleural thickening does not constitute an injury sufficient to bring about a legal cause of action, we are persuaded by the reasoning in other jurisdictions, along with our own trial courts, that have been faced with similar issues. In *Wright v. Eagle–Picher Industries, Inc.,* 80 Md.App. 606, 565 A.2d 377 (1989), Maryland's court of appeals was confronted with the issue of whether the trial court had invaded the province of the jury by its instruction that the medical condition of pleural plaques alone was a non-compensable injury. The court found no error in the pleural plaques instruction. Like Mr. Giffear, the appellants in *Wright* "failed to present any testimony indicating that pleural plaques caused any injury, symptom or functional impairment to any of the appellants." *Id.,* 80 Md.App. at 615, 565 A.2d at 381. *See also Caterinicchio v. Pittsburgh Corning Corp.,* 127 N.J. 428, 605 A.2d 1092 (1992) (following reasoning in *Wright* ).

Even more persuasive is a decision out of an Arizona state appellate court, *Burns v. Jaquays Mining Corp.,* 156 Ariz. 375, 752 P.2d 28 (1987). The *Burns* court was asked to decide the very same issue confronting us today, that is, "whether subclinical asbestos-related injury is sufficient to constitute the actual loss or damage required to support a cause of action." *Id.* at 376, 752 P.2d at 29. In answering this question in the negative, the Arizona state court relied upon federal law. Specifically, the court quoted at length from *Schweitzer v. Consolidated Rail Corp.,* 758 F.2d 936 (3d Cir.1985), *cert. denied,* 474 U.S. 864, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985):

It is true that the possible existence of subclinical asbestos-related injury prior to manifestation may be of interest to a histologist. [citations omitted] Likewise, the existence of such injury may be of vital concern to insurers.... We believe, however, that *subclinical injury resulting from exposure to asbestos is insufficient to constitute the actual loss or damage to a plaintiff's interest required to sustain a*

*cause of action under generally applicable principals of tort law.* . . . Requiring manifest injury as a necessary element of an asbestos-related tort action . . . best serves the underlying purpose of tort law: the compensation of victims who have suffered.

*Burns,* 156 Ariz. at 376–77, 752 P.2d at 29–30, quoting *Schweitzer, supra,* at 942 (emphasis added).

In another federal case, *Hawaii Federal Asbestos Cases,* 734 F.Supp. 1563 (D.Haw.1990), plaintiffs claimed damages for bodily harm and fear of cancer as a result of asbestos exposure. In framing the issues on appeal, the *Hawaii Federal* court mirrored the concerns we are faced with in *Giffear.*

Frequently, persons claiming damages from exposure to asbestos reflect no objectively observable disablement which is traditionally the basis of tort litigation. . . . While some of the lung diseases caused by asbestos, such as mesothelioma and asbestosis, typically involve some of these indicia of injury, mere lung scarring or pleural plaques or pleural thickening frequently do not involve these indicia. . . . All of the above indicates a need for some form of easily verifiable standard for determining whether an "injury" exists and when such injury warrants an award of compensation.

*Id.* at 1566. The court went on to determine that the mere presence of asbestos fibers, pleural thickening or pleural plaques in the lung, unaccompanied by an objectively verifiable functional impairment, is not enough to show compensable harm. *Id.* at 1567. As pointed out earlier, in reaching its conclusion, the court pointed to the widely accepted notion that "in virtually all pleural plaque and pleural thickening cases, plaintiffs continue to lead active, normal lives, with no pain or suffering, no loss of the use of an organ or disfigurement due to scarring." *Id.* at 1566.

We are equally impressed with the Pennsylvania trial court decisions that have called for reform in asbestos litigation. For instance, it was suggested in *Blue v. Johns–Manville Corp.,* 10 Phila. 23 (1983) that "there should be no cause of

action [for pleural thickening] unless there is impairment (reduced physiological function).... There must be a demonstrable change in bodily function before there can be recovery." *Id.* at 38. Additionally, the court made the point that while a plaintiff diagnosed with asymptomatic pleural thickening "may have a scar on his lung or lung lining that is visible by x-ray, ... he would never know this without the help of a radiologist." *Id.* at 45.

██ Finally, in deciding that a claim of asymptomatic pleural thickening does not rise to the level of a legally cognizable cause of action or, in other words, a legally compensable injury,[9] we look favorably upon the Honorable Armand Della Porta's reasoning in *Czekaj v. Johns–Manville et al.*, 23 Phila. 278 (1991) (en banc). As recognized in the *Czekaj* case, what constitutes a cognizable cause of action is a legal question reserved for a court and not a factual question for a jury. *Kosjer v. Commonwealth Dept. of Public Welfare*, 76 Pa. Commw. 614, 464 A.2d 687 (1983); *Framlau Corp. v. Delaware County*, 223 Pa.Super. 272, 299 A.2d 335 (1972). In *Kosjer*, a cause of action was described as follows: "A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show.... The facts are merely the means, and not the end. They do not constitute the cause of action, but they show its existence by making the wrong appear." *Kosjer*, 76 Pa.Commw. at 616, 464 A.2d at 688, quoting *Baltimore Steamship Co. v. Phillips*, 274 U.S. 316, 321 (1927). Against this backdrop, the *Czekaj* court expressed the following:

> A jury does not determine which rights are protected by law or what are the elements of a right, a claim, a tort, or a compensable injury. That is why a jury must be instructed

---

**9.** We wish to point out that proper analysis of this issue requires us to go beyond the semantics involved and, instead, reach the true heart of the matter: Has Mr. Giffear been harmed in a way which entitles him to recover compensatory damages? Throughout our analysis of this question, unlike the terms "harm" and "injury" in the Restatement, we have used "legal harm" and "legal injury" interchangeably. Thus, when we refer to a "compensable injury," we are equating this with a "legal injury." The same is true when we use "compensable harm," which we consider to have the same meaning as "legal harm."

by the Court as to what constitutes a right or the elements of a tort. After being so instructed, it is then the jury's task to evaluate the evidence to determine whether it fulfills the requirements of the law, or satisfies the elements of the tort, or, in the words of the highest Court of the Land, shows the existence of the cause of action in that case, by making the tort appear. [*Baltimore Steamship, supra.*]

[I]t is for the law, as defined by either the Court or the Legislature, to determine whether pleural thickening without accompanying illness, impairment or disability, constitutes a compensable injury, or whether it must be accompanied by such symptoms before the law recognizes the combination of both as a compensable injury.

*Czekaj,* 23 Phila. at 284.

▮ While we sympathize with Mr. Giffear's disturbing discovery, his diagnosis does not warrant compensation. Where we cannot find that one has suffered a symptomatic injury, how is it possible to assess damages? Had Mr. Giffear suffered from discernible physical symptoms, a functional impairment or disability resulting from the pleural thickening, the law, supported by the Commonwealth's public policy and economic reason, would clearly recognize that his injury would entitle him to an award of damages. It remains that, but for the fact that x-rays were taken revealing a pleural condition, Mr. Giffear would not have realized that such a condition even existed. It would hardly be fair to compensate him for something that has yet to manifest itself into a functional impairment. If and when such impairment does occur, Mr. Giffear may then bring an action for damages. Until that time, however, he is without a legally cognizable claim; there is, at this point, no legal injury. In light of our findings today, there is no reason for courts to entertain claims based on a discovery of asymptomatic pleural thickening. Without evidence that such a condition is causing ascertainable physical symptoms, impairment, or disability, pleural thickening is a non-compensable injury and, therefore, does not give rise to a cause of action.

In reaching this decision, we must now modify two recent opinions of this court. *Higginbotham v. Fibreboard Corp.*, 428 Pa.Super. 26, 630 A.2d 14 (1993) and *Morrison v. Fibreboard Corp.*, 428 Pa.Super. 114, 630 A.2d 436 (1993) both confronted one of the issues here, namely, whether it was error to allow the jury to award damages based on a fear of cancer/asbestos related disease in the future. Citing *Marinari*, this court correctly concluded in both *Higginbotham* and *Morrison* that an award of damages based upon the fear of developing asbestos-related lung cancer or mesothelioma would not stand, given the introduction of the separate disease rule (discussed *infra*). Both cases, however, also cite *Marinari* for the proposition that pleural thickening, even when asymptomatic, is an injury which gives rise to a cause of action and both decisions remand for a new trial for injuries *presently* suffered by the appellees. Given our recent analysis of the pleural thickening issue, the appellees in *Higginbotham* and *Morrison* do not have a cause of action for, nor can they recover from, pleural thickening without accompanying physical symptoms. Thus, these decisions are overruled *only* to the extent that they cite *Marinari* to stand for the principle treating asymptomatic pleural thickening as a legally cognizable injury.

■ Regarding our disposition of the asymptomatic pleural thickening issue, questions have been raised about whether or not the separate disease rule is still necessary, given our decision to not allow a cause of action or recovery for asymptomatic pleural thickening. Our holding today in no way abolishes the need for the two disease rule, as it is restricted to apply *only* to pleural thickening *not* accompanied by physical symptoms. If, for example, Mr. Giffear's pleural thickening was proven to be debilitating in a physical sense, he would then have a legally cognizable claim whereby damages could be recovered. Perhaps if it were shown that Mr. Giffear was restricted from physical activities that he had engaged in before the pleural thickening had set in, a claim and possible recovery could be made at that time. Any recovery awarded for such *symptomatic* pleural thickening would not preclude a

later action if cancer were to develop as a result of the asbestos exposure. *Marinari, supra.* The important distinction here lies in the fact that Mr. Giffear was experiencing no discernible physical harm as a result of the pleural thickening.

■ The Giffears next argue that Mr. Giffear did indeed suffer impairment from the knowledge of his pleural thickening condition, that is, in the form of an increased risk and fear of cancer. In considering this second issue, we find, once again, that Mr. Giffear's fear and increased risk of cancer is not something for which he can be compensated. We upheld the trial court's j.n.o.v. on the basis that Mr. Giffear had not suffered a compensable injury; as such, and in accordance with the court's jury instructions, *supra,* and *Marinari, supra,* Mr. Giffear is entitled to bring another lawsuit should he develop asbestos-related cancer in the future.

■ Quite clearly, because of our recent adoption of the "two disease rule" for asbestos actions, claims for risk and fear of cancer no longer form a basis for recovery in asbestos cases where cancer is not present. Part of the *Marinari* rationale provided:

> The speculative nature of the prediction of future damages—that a person with asbestosis will someday contract cancer—may lead to several inequitable results. First, the plaintiff who does not contract cancer gets a windfall—cancer damages without cancer. [citation omitted]....
> [Also,] inequitable awards are more likely to result from a future damages action simply because the damages cannot be known. If the disease has ... come into existence—the actual financial needs of the plaintiff can obviously be more accurately assessed. [citation omitted].

*Marinari,* 417 Pa.Super. at 451, 612 A.2d at 1026–27, quoting *Eagle–Picher Industries, Inc. v. Cox,* 481 So.2d 517, 523–24 (Fla.Dist.Ct.App.1985) (footnotes omitted). Thus, pursuant to our newly adopted *Marinari* rule, "in an action for exposure to asbestos, a plaintiff's claim may encompass only the harm caused by the diseases which have become manifest and that a later separate action may be pursued if and when a separate

disease occurs." *Ottavio v. Fibreboard,* 421 Pa.Super. 284, 296, 617 A.2d 1296, 1302 (1992) (en banc); *see also Altiere v. Fibreboard Corp.,* 421 Pa.Super. 297, 306–07, 617 A.2d 1302, 1304 (1992) (en banc). In *Ottavio* it was specifically held that in an action for asymptomatic pleural thickening, the plaintiffs could not recover monetary damages for the risk of a future disease such as cancer. *Id.,* 421 Pa.Super. at 297, 617 A.2d at 1302.

Similar reasoning was recently espoused in *Lubowitz v. Albert Einstein Med. Ctr.,* 424 Pa.Super. 468, 623 A.2d 3 (1993), where this court was called upon to decide whether the appellants stated a legally cognizable cause of action for their "fear of AIDS." In concluding that there was no legally cognizable injury for appellants' claim, we applied the rationale used in the asbestos cases involving "fear of cancer" claims.

It is undisputed that appellants have never tested positive for the AIDS antibody. Moreover, although Robyn Lubowitz alleges that she suffered physical manifestations of emotional distress, the actual injury at issue is the "fear of AIDS." Whether such fear is a compensable injury is an issue of first impression in this Commonwealth. However, we are guided by the decisions which involve similar "risk of contracting disease" claims. *See, e.g., Ottavio v. Fibreboard Corp.,* 421 Pa.Super. 284, 617 A.2d 1296 (1992); *Altiere v. Fibreboard Corp.,* 421 Pa.Super. 297, 617 A.2d 1302 (1992); *Marinari v. Asbestos Corp.,* 417 Pa.Super. 440, 612 A.2d 1021 (1992).

\*     \*     \*     \*     \*     \*

As in *Ottavio,* Robyn Lubowitz *cannot recover, in her asymptomatic state, monetary damages for a risk or fear of developing AIDS in the future.*

*Lubowitz,* 424 Pa.Super. at 471, 623 A.2d at 5 (footnote omitted) (emphasis added).

As is evident from the case law set forth above, the Commonwealth's most recent decisions addressing claims for risk/ fear of contracting future diseases clearly have not allowed

recovery. Applying the same rationale to the case at bar, we find that Mr. Giffear's risk/fear of cancer is not a compensable or legally cognizable injury. *Id.* We believe that this result provides the most efficient and fair resolution of future disease claims. There is an obvious need in our judicial system to effect just results based on proof rather than upon pure speculation. "The adjudicative process must ultimately serve the principle that a fair and just resolution of disputes depends upon a search for the truth, based on factual, non-speculative evidence." *Marinari,* 417 Pa.Super. at 451, 612 A.2d at 1027. Mr. Giffear, in his asymptomatic state, may never contract cancer or any other asbestos-related compensable disease. To allow recovery under these circumstances based on his fear alone would fly in the face of our recent adoption of the separate disease rule. Again, we remind Mr. Giffear that, should he develop cancer, he would then have a cause of action for a compensable injury and could bring a lawsuit at that time.

After consideration of the evidence and all reasonable inferences drawn from such evidence, in the light most favorable to the Giffears, we uphold the trial court's grant of j.n.o.v. in favor of Keene and Fibreboard. *Mitzelfelt, supra; Lira; supra.* Because we find that the Giffears have not alleged legally cognizable causes of action, we affirm the trial court's order.

Order affirmed.

WIEAND, J., files a concurring opinion.

DEL SOLE, J., files a concurring opinion, in which FORD ELLIOTT, J., joins.

WIEAND, Judge, concurring.

I concur in the result. The plaintiff-appellant in this case showed that he had sustained an asymptomatic pleural thickening, but he was unable to show any loss or damages resulting from that condition. Under decisions in *Marinari v. Asbestos Corp. Ltd.,* 417 Pa.Super. 440, 612 A.2d 1021 (1992), *Ottavio v. Fibreboard Corp.,* 421 Pa.Super. 284, 617 A.2d 1296

(1992), and *Altieri v. Fibreboard Corp.*, 421 Pa.Super. 297, 617 A.2d 1302 (1992), he was not entitled to recover damages because of a fear or risk that he *might* at some time in the future contract cancer. Therefore, the trial court could properly set aside the jury's award of damages and enter judgment n.o.v. in favor of the defendant-appellees.[1]

I would leave for another day whether under different circumstances recovery should be allowed for other damages, if any, flowing from asymptomatic pleural thickening.

DEL SOLE, Judge, concurring.

To the extent the Majority holds that a person cannot recover damages for "fear of cancer" and "risk of future cancer" in asbestos cases where cancer is not present, I agree. However, I cannot agree with the conclusion that asymptomatic pleural thickening is not an injury, and, therefore, does not give rise to a cause of action. I suggest that the Majority is confusing a cause of action with damages that can be recovered given a certain medical condition.

I disagree with the Majority's conclusion for three reasons. First, it is not necessary to discuss this question in order to decide the issue before us, namely what damages are recoverable where pleural thickening exists but there is no cancer.

Second, the holding in *Marinari v. Asbestos Corp., Ltd.*, 417 Pa.Super. 440, 612 A.2d 1021 (1992) creating a "two disease" rule inherently recognizes that asymptomatic pleural thickening is an injury which gives rise to a cause of action. Otherwise there would have been no need to create such a rule. As recently as July 15, 1993 this court, in two separate opinions, repeated the rule that asymptomatic pleural thickening is sufficient to give rise to a cause of action. *Morrison v. Fibreboard*, 329 Phil. 1992; *Higginbotham v. Fibreboard*, 328 Phil. 1992.

---

1. In view of the decision in *Marinari v. Asbestos Corp., Ltd., supra,* it may have been more correct to enter judgment n.o.v. in favor of the plaintiff-appellant for nominal damages of one ($1.00) dollar.

Third, the majority wrongly assumes that a person with asymptomatic pleural thickening has no damages. This may not necessarily be the case. For example, once one is diagnosed with pleural thickening, there may be medically necessary reasons for increased medical monitoring of the lungs to provide early detection of cancer. The costs of this monitoring would be recoverable. Also, in a particular case, an individual may be able to establish that this condition resulted in lost employment opportunities or decreased earning capacity. In these events the claim should be permitted to be made, and if damages are established, recovery allowed.

I suggest that it is better to limit our decision to the issue before us and allow the law of recoverable damages in pleural thickening cases to develop on a case by case basis.

FORD ELLIOTT, J., joins.