Francis E. CAUTHORN, Appellee,

v.

OWENS CORNING FIBERGLAS CORP., Pittsburgh Corning Corp., Greene Tweed & Co. Inc., A.W. Chesterson Inc., Quigley Co. Inc., Pfizer Inc., Gaf Corp., Rubberriod Co. Inc., Owens Illinois Inc., Flextallic Gasket Co., Flintkot Co., Armstrong World Indus. Inc., U.S. Gypsum Co., Porter Hayden Co., Foster Wheeler Corp. Inc., Pars Mfg. Co. J.H. France Refractories Co., A.C. & S. Corp., Turner–Newall, Ltd., Allied Corp., Uniroyal Inc., Asbestos Claims Mgmt. Corp., Brand Insulation Inc., Selas Corp. of America, Bickley Furnaces Inc., Armstrong Cork Co., Riley Stoker Corp., Drever Furnaces, Keller Dorr–Oliver Boiler Co., Cleaver Brooks, W.R. Grace & Co. Inc., Crane Packing, Rapid American Corp., Combustion Engineering Inc., General Refractories Co.

Appeal of: John Crane Inc. Appellant.

Superior Court of Pennsylvania.

Argued Oct. 8, 2003.

Filed Jan. 5, 2004.

Nancy M. Harris, Philadelphia, for appellant.

Michael A. Cancelliere, Jr., Philadelphia, Cauthorn, appellee.

Before: STEVENS, OLSZEWSKI, and BECK, JJ.

OLSZEWSKI, J.

¶ 1 Francis E. Cauthorn brought suit against John Crane, Inc. and other companies that either sold or manufactured asbestos products. Plaintiff Cauthorn, the appellee in this case, alleged that he is suffering from symptomatic asbestos-related diseases caused by exposure to asbestos products. This trial was conducted in a reverse-bifurcated fashion before a jury, with the jury first determining appellee's damages and then apportioning liability for these damages between the defendant companies. John Crane, Inc. was held liable for a portion of Mr. Cauthorn's injuries and now appeals.[1]

## FACTS

### The Phase I Trial: Determination of Damages

¶ 2 At the time of trial, Mr. Cauthorn was 64 years old. For 14 years of his life (from 1966 until 1980) he built and inspected furnaces for the Leeds and Northrup Company. He testified that he handled and was surrounded by asbestos-containing products every day during this time. Further, the building of furnaces required him to cut, or inspect others while they were cutting, these asbestos-containing products. It was the cutting of the products that created dust he would then breathe in. This dust also covered his

---

1. Appellant's notice of appeal purports to appeal the February 27, 2002, order that denied their post-trial motions. Orders denying post-trial motions, however, are not appealable. Rather, it is the subsequent judgment that is the appealable order when a trial has occurred. *Brown v. Philadelphia College of Osteopathic Medicine,* 760 A.2d 863, 865 (Pa.Super.2000). Yet, the current appeal is proper. This is because the February 27th order also entered a judgment on the verdict. *Taxin v. Shoemaker,* 799 A.2d 859, 860 (Pa.Super.2002) (order that denies post-trial motions and unequivocally enters judgment in the same order is immediately appealable and no separate entry of judgment is required).

work uniform so that at the end of the day he would have to take an airhose and blow the dust off of his clothing, thus causing the dust to recirculate and him to breathe in even more dust.

¶ 3 In 1999, Mr. Cauthorn began to experience trouble with his breathing. This prevented him from walking "just about anyplace...without getting out of breath or short of breath." Because of this, he was and still is forced to drive everywhere he wishes to go, even if it is a couple of blocks away. Mr. Cauthorn is also suffering from quite a few other serious health conditions. He testified that he is taking medication for high blood pressure, diabetes, high cholesterol, a kidney disorder, a heart condition, and an occasional attack of gout. In his youth he contracted pneumonia, and in 1999 he underwent triple bypass heart surgery. Further, he testified that he smoked a pack and a half to two packs of cigarettes a day from the time he was in high school until he quit around 1997 or 1999 (which is about 40 years of heavy smoking).

¶ 4 In preparation for trial, Dr. Stanley L. Altschuler examined Mr. Cauthorn. Dr. Altschuler testified as an expert at trial and told the jury of his examination findings, as well as his opinions regarding his examination of Mr. Cauthorn. The doctor declared that when listening to Mr. Cauthorn's lungs, he heard "crackles or rales" in the bottom of both lungs. As it was occurring in the bottoms of both lungs, Dr. Altschuler declared that this finding suggested plaintiff was suffering from interstitial fibrosis, a type of which is asbestosis.

¶ 5 The doctor followed this by describing three breathing tests he performed on Mr. Cauthorn and found an abnormal diffusion capacity in his lungs. The doctor declared: "I can't say that [Mr. Cauthorn] has abnormal, but I have a hesitancy to say that this is actually a normal lung volume."

¶ 6 Finally, Dr. Altschuler testified as to his review of a number of Mr. Cauthorn's chest x-rays as well as a CAT scan of Mr. Cauthorn's chest. On the basis of this evidence, Dr. Altschuler testified that Mr. Cauthorn:

> [h]ad evidence of pleural thickening. He had abnormalities on both diaphragms with a calcification, which is very characteristic of asbestos disease. On one diaphragm the calcification wasn't present. On the other diaphragm, on the CAT scan, we can see also some calcification on the chest wall on the right side and scarring. That's for the pleural portion of it. In addition on the chest x-ray there is scarring that we can see in the lung tissue and we see scarring on the CAT scan also.

¶ 7 Dr. Altschuler was familiar with plaintiff's extensive list of physical ailments as well as plaintiff's former smoking habit. Even so, the doctor declared that, taking everything together, "Mr. Cauthorn has asbestosis and asbestos-related pleural disease." According to the doctor, "[e]ach breath of asbestos that [Mr. Cauthorn] inhaled contributed to his development of [these] asbestos diseases." Further, the doctor declared that Mr. Cauthorn's asbestos diseases are "a contributing factor to his shortness of breath" and his "abnormal diffusion capacity."

¶ 8 While on cross-examination Dr. Altschuler admitted that he could not distinguish "what percentage of [Mr. Cauthorn's diffusion capacity abnormality] is caused by cigarettes and how much is caused by asbestos," the doctor reiterated his opinion that "cigarette smoking and asbestos exposure [were] contributing factors in [Mr. Cauthorn's] diffusion abnormality."

¶ 9 John Crane, Inc. presented opposing expert testimony of Dr. Thaddeus C. Bartter. Dr. Bartter had also examined Mr. Cauthorn in preparation for the trial. Dr. Bartter testified, however, that he did not hear any "crackling" sounds emanating from plaintiff's chest. The doctor also performed breathing tests on Mr. Cauthorn and found that his lungs were "minimally restrictive." Since three months prior to this test Mr. Cauthorn had "totally normal" lung volume, Dr. Bartter concluded that plaintiff's lung restriction was not asbestos-related, but rather due to "something like smoking or asthma."

¶ 10 In reviewing Mr. Cauthorn's x-rays and CAT scans, Dr. Bartter found only one-sided pleural calcification, suggesting that Mr. Cauthorn does not have asbestosis. Finally, Dr. Bartter concluded: "in this particular case ... there is no evidence of asbestosis." The doctor further declared that plaintiff's shortness of breath was due, not to an asbestos-related disease, but rather to plaintiff's long history of smoking and the doctor's conclusion that plaintiff had tuberculosis in his past.

¶ 11 The jury found that Mr. Cauthorn had indeed suffered an asbestos-related injury and awarded him $150,000 in damages. This concluded the Phase I trial.

*The Phase II Trial: Determination of Liability*

¶ 12 Two days after this verdict, Phase II of the trial began. Plaintiff began by calling Dr. Altschuler. The doctor testified as to the harmful and cumulative effect of asbestos. He testified that "[b]ecause any asbestos fiber will cause some degree of injury...each fiber will have some small effect and it's the cumulative effect of all the different fibers." Further, he declared "[e]ach breath of air that contained asbestos fibers substantially contributed to the development of [Mr. Cauthorn's] diseases." As to Mr. Cauthorn's shortness of breath, Dr. Altschuler found "the asbestos fibers...would have caused small amounts of injury which would accumulate to reach a point that it has in Mr. Cauthorn where we can visibly see it on chest x-rays and he can experience it by his symptoms of shortness of breath."

¶ 13 Mr. Cauthorn testified next as to product identification. He stated that both John Crane, Inc. and PARS supplied asbestos rope to his workplace. He knew this because he saw the names of both corporations on the packages of rope with the word "asbestos" printed on the packages. With respect to the John Crane rope, he described it as packaged in "boxes and it was on rolls, spools that you roll off, and it was in bags also." This rope was white, not slick, pliable, and had to be cut with a knife. It was when he cut the rope with his knife that he would see the "dust" coming from the rope. This dust he would then breathe in. On cross-examination it was elicited from the plaintiff that, at any given time, he did not know whether PARS or John Crane supplied the rope he was using.

¶ 14 John Crane's first witness was George McKillop, an employee of John Crane. Mr. McKillop testified that their asbestos rope was "slick" and that, even though the product catalogue declared that the rope was "unlubricated," it was actually coated with a "ludox" coating that held the fibers and yarns together. Further, he testified that their rope did not come in a box but rather came on spools or balls. When sending their asbestos rope, however, they actually did place their spools in a box.

¶ 15 Finally, John Crane called Dr. Frederick M. Toca as an expert in preventive medicine, toxicology, industrial hygiene, and asbestos sampling. Dr. Toca testified that in both controlled and field tests, the asbestos rope emitted a very low

level of asbestos dust. Dr. Toca declared that the level of asbestos that went airborne by the cutting and installation of the asbestos rope was "well below or within safe limits or below limit—below a harmful level."

¶ 16 At the close of the evidence, John Crane submitted proposed jury instructions that included the charge: "Do you find that it's been proven by a fair preponderance that the asbestos-containing products were defective[?]" The trial judge did not use this proposed instruction. Rather, the judge instructed the jury that to find John Crane liable, plaintiff must "prove exposure to the defendant's product and to prove that the exposure was a substantial factor in causing his asbestosis and his asbestos-related disease or condition."

¶ 17 The jury found that Mr. Cauthorn did meet his burden of proof and came back with a finding of liability against John Crane.

## ISSUES

¶ 18 Appellant John Crane, Inc. raises the following issues on appeal:

1. Whether John Crane is entitled to judgment notwithstanding the verdict because plaintiff failed to prove that he suffered from a symptomatic asbestos-related disease?

2. In the alternative, whether John Crane is entitled to a new Phase I trial, because the jury's finding of injury was against the weight of the evidence?

3. Whether John Crane is entitled to judgment notwithstanding the verdict because no reasonable jury could find on the evidence presented in this case that its products were defective or caused any injury to plaintiff?

4. In the alternative, whether John Crane is entitled to a new Phase II trial, because the jury's liability finding was against the weight of the evidence?

5. Whether John Crane is entitled to a new Phase II trial because the lower court erroneously charged the jury on liability and refused to submit to the jury the question of whether John Crane's products were defective?

## DISCUSSION

### John Crane's Waiver of Issues 2 & 4:

¶ 19 The trial court found John Crane waived its two weight of the evidence claims since "they appear[ed] only in boilerplate form in appellant's post-trial motion, and again in its 1925(b) statement."

■ ¶ 20 A review of appellant's post-trial motion shows that John Crane did only allege a boilerplate weight of the evidence claim. As to whether John Crane was entitled to a new Phase I trial on this theory, John Crane's post-trial motion states: "The jury's finding on liability against John Crane, Inc. was against the weight of the evidence." With respect to whether John Crane is entitled to a new Phase II trial, appellant declares that "[t]he damages awarded by the jury were against the weight of the evidence." Nowhere does appellant attempt to offer any type of argument in support of its weight of the evidence claim or any attempt to "specify what preponderant evidence was overlooked by the jury in reaching a verdict." *Commonwealth v. Brown*, 538 Pa. 410, 440, 648 A.2d 1177, 1192. It is not up to the trial judge to make appellant's argument for him.

¶ 21 As we declared in *Carnicelli v. Bartram*:

We believe that *Tagnani* [*v. Lew*, 493 Pa. 371, 426 A.2d 595 (1981) ] requires that the same disapproval of "boilerplate" motions be extended to civil cases. To permit the trial court to grant a new trial on the basis of a very general as-

signment of error, such as "the verdict is against the law" or "against the evidence," would result in losing the advantages of requiring specific assignments of error. Furthermore, to permit the trial court to make its own selection of reasons for granting a new trial, and then allocate those reasons under the rubric that the verdict was "against the law" or "against the evidence," would permit the court to grant a new trial for a reason that counsel would have been prevented from raising in the motion for new trial because at the time the alleged error occurred, no objection was made. Such a result would clearly be contrary to the mandate of *Tagnani*.

289 Pa.Super. 424, 433 A.2d 878, 881 (1981).

¶ 22 The learned trial judge in this case thus correctly ruled that appellant waived its weight of the evidence claims for purposes of both its review and ours. *Id.* at 884.

*John Crane's Waiver of Issue 5:*

¶ 23 John Crane has also waived its argument that the trial judge erred when it instructed the jury. John Crane declares: it "is entitled to a new Phase II trial because the lower court erroneously charged the jury on liability and refused to submit to the jury the question of whether John Crane's products were defective." This theory was never submitted to the trial judge on post-trial motions.

¶ 24 John Crane contends that it referred to this issue twice in its post-trial motion: first stating that "Plaintiff failed to prove that any John Crane, Inc. products were defective", and second when it declared that "the trial court erred by allowing the case to go to the jury without any evidence or testimony that the John Crane product was defective." This contention is meritless.

¶ 25 Neither of appellant's above-referenced statements presented the issue of whether the trial judge erred in its jury instructions. Appellant's assertions in its post-trial motion can only be interpreted as an attempt to receive a judgment notwithstanding the verdict under the theory that plaintiff failed to prove all elements of his cause of action. In fact, both quotes appellant now points to are found under the heading "Judgment NOV" in its post-trial motion. It is not surprising that the trial judge, while addressing all of appellant's other claims in its opinion, never discussed appellant's jury instruction theory: appellant never raised it.

¶ 26 Appellant thus never gave the trial judge a "chance to correct alleged trial errors" concerning the jury instructions. *Sahutsky v. H.H. Knoebel Sons,* 566 Pa. 593, 599–600, 782 A.2d 996, 1000 (2001). This claim is waived.

¶ 27 We will proceed to discuss the two issues John Crane properly preserved in this appeal.

*Issue 1: Whether John Crane, Inc. is entitled to judgment notwithstanding the verdict because plaintiff failed to prove that he suffered from a symptomatic asbestos-related disease?*

*Standard of Review for Judgment Notwithstanding the Verdict Claims*

¶ 28 When reviewing a case that denies a request for judgment notwithstanding the verdict, the appellate court must "view the evidence in the light most favorable to the verdict winner and give him or her the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences." *The Birth Ctr. v. The St. Paul Companies, Inc.,* 567 Pa. 386, 397, 787 A.2d 376, 383 (2001). Thus, the grant of a judgment n.o.v. "should only be entered in a clear case and any doubts must be resolved in

favor of the verdict winner." *Atkins v. Urban Redevelopment Authority of Pittsburgh*, 489 Pa. 344, 414 A.2d 100 (1980). It is only when either "the movant is entitled to judgment as a matter of law" or "the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant" that an appellate court may vacate a jury's finding. *Moure v. Raeuchle*, 529 Pa. 394, 402, 604 A.2d 1003, 1007 (1992).

*What constitutes a compensable asbestos-related injury?*

■ ¶ 29 Appellant argues that plaintiff failed to prove that he suffered from a symptomatic asbestos-related disease. If appellant is correct in this assertion, it would be entitled to the j.n.o.v. it seeks. This is because in the Commonwealth, it is no longer possible for a plaintiff to recover for "asymptomatic asbestos-related injuries." *Giffear v. Johns–Manville Corp.*, 429 Pa.Super. 327, 632 A.2d 880 (1993).

■ ¶ 30 A plaintiff's asbestos-related injuries are "asymptomatic" when it can be objectively demonstrated that plaintiff has been injured by asbestos exposure, but the injuries are unaccompanied by "discernible physical symptoms or functional impairment." *Id.* at 885. Thus, even though the plaintiff has shown by an x-ray photograph that he is suffering from asbestosis, he will be unable to recover for this injury unless his asbestosis manifests itself in some outward form. When the plaintiff is "able to lead [an] active, normal [life], with no pain or suffering, no loss of organ function, and no disfigurement due to scarring," that plaintiff may not recover for his asbestos-related injuries as a matter of law. *Id.* at 884.

■ ¶ 31 If the plaintiff can prove that his asbestos-related disease has led to "discernible physical symptoms or functional impairment," plaintiff has proven that his asbestos-related disease is "symptomatic" and thus compensable under *Giffear*. What constitutes a "discernible physical symptom[ ] or functional impairment" has, however, been debated in the Superior Court.

¶ 32 Some of the cases decided after *Giffear* have held that an asbestos-related disease which is only accompanied by shortness of breath is still an asymptomatic disease. In *Taylor v. Owens–Corning Fiberglas Corp.*, the Superior Court declared: "[i]t is common knowledge that breathlessness is also associated with any number of non-asbestos-related ailments including lung cancer, excessive cigarette smoking, heart disease, obesity, asthma, emphysema and allergic reactions." 446 Pa.Super. 174, 666 A.2d 681, 687 n. 2 (1995). *Taylor* would require something more than shortness of breath before the plaintiff could establish that his asbestos-related injuries were symptomatic.

¶ 33 In *White v. Owens–Corning Fiberglas Corp.*, the Court elaborated on what "more" is required before the plaintiff can establish a compensable asbestos-related injury. 447 Pa.Super. 5, 668 A.2d 136 (1995). In this case, the plaintiff was diagnosed with asbestos-related pulmonary diseases. The *White* Court reiterated its statement that asbestos-related injuries which are only outwardly manifested in shortness of breath do not constitute a compensable injury under *Giffear*. Mr. White, however, also testified that he "had severe difficulties breathing after walking more than half a block, climbing a flight of stairs, driving a nail, or washing the dishes." This testimony, the Court found, demonstrated that Mr. White has "discernible physical symptoms, a functional impairment or disability" under *Giffear*. *White*, 668 A.2d at 146.

¶ 34 Thus, it was the testimony showing plaintiff's shortness of breath hampered his daily activities (along with evidence demonstrating a causal connection between his shortness of breath, asbestos exposure, and asbestos-related lung injuries) which enabled plaintiff to satisfy his burden of production and established a *prima facie* case of symptomatic (and therefore compensable) asbestos-related injuries.

¶ 35 Another line of Superior Court cases has found symptomatic asbestos-related injuries when plaintiff establishes: 1) an asbestos-related condition, 2) shortness of breath, and 3)' a causal connection between the two. *McCauley v. Owens–Corning Fiberglas Corp.*, is one such case. 715 A.2d 1125 (Pa.Super.1998).

¶ 36 It could be argued that since *McCauley* applied pre-*Giffear* law, thus allowing a plaintiff to recover for asymptomatic asbestos-related injuries, it is of no account to our current case. *Id.* at 1128. This assertion would be incorrect, however, since the *McCauley* Court found that the statute of limitations had run on Mr. McCauley's asymptomatic pleural thickening claim. Thus, the Court was forced to determine whether his asbestos-related injuries had turned symptomatic. If the injuries had become symptomatic, the Court declared Mr. McCauley would be suffering from a "separate and distinct disease" and would be able to bring suit on these new symptomatic injuries. *Id.* at 1129. Therefore, *McCauley* does inform our determination of when a plaintiff's injuries become symptomatic.

¶ 37 The *McCauley* Court was aware of *Taylor* and cited it for the proposition that shortness of breath alone "is not considered a compensable injury." *Id.* at 1131. The Court then went on to say that "in addition to suffering shortness of breath [Mr. McCauley] also suffered from asbes-

tosis and other asbestos-related conditions (i.e., pleural plaques)." *Id.* The *Taylor/White* Court, however, would have required at least one more factor: that plaintiff's shortness of breath somehow affects his lifestyle. But the *McCauley* Court did not require this further condition: it just required a causal connection between a plaintiff's shortness of breath and his asbestos-related diseases. Further, in *McCauley* there is no talk of any other non-asbestos-related ailments that would have affected his breathing, such as found in *Taylor* and *White*.

¶ 38 The *McCauley* reasoning was followed in *Ryan v. Asbestos Corporation, Ltd.*, 829 A.2d 686 (Pa.Super.2003). *Ryan* found that *Taylor* merely stood for the fact that "shortness of breath, without any evidence that the shortness was caused by asbestosis, is not a compensable injury." *Id.* at 689. The *Ryan* Court then declared: "[w]here the symptom of shortness of breath is causally related to a diagnosis of asbestos, a compensable injury does in fact exist." *Id.*

 ¶ 39 Under either of the above approaches, Mr. Cauthorn has established that his asbestos-related injuries are symptomatic. When viewing the evidence in the light most favorable to Mr. Cauthorn, it demonstrates that he is suffering from asbestosis and pleural thickening— his expert testified as to this. Second, his expert testified that these injuries were proximately caused by Mr. Cauthorn's inhalation of asbestos. Third, Mr. Cauthorn testified that he suffers from shortness of breath. Fourth, Mr. Cauthorn's expert testified that, while Mr. Cauthorn suffers from a myriad of other health problems, Mr. Cauthorn's shortness of breath is due in part to his inhalation of asbestos and his asbestos-related injuries. Finally, and unlike the plaintiff in *Taylor*, Mr. Cauthorn testified that his shortness of breath

harms his daily lifestyle. Specifically, Mr. Cauthorn testified that because of his shortness of breath he cannot walk more than a half a block and must drive everywhere he wishes to go. Thus, even under the *Taylor/White* analysis, Mr. Cauthorn has suffered a compensable injury from asbestos inhalation.

¶ 40 It could be argued, however, that a recent Superior Court opinion foreclosed Mr. Cauthorn's ability to recover for his injuries. This case is *Quate v. American Standard, Inc.,*[2] 818 A.2d 510 (Pa.Super.2003). Read broadly and in the abstract, we agree that parts of *Quate* seem to encompass Mr. Cauthorn's case and could be read so as to preclude Mr. Cauthorn's recovery for his asbestos-related injuries. We do not believe, however, that the words at issue can be read divorced from the case itself. Rather, viewing *Quate's* "holding" with the facts the Court was facing and the reasoning of the opinion as a whole, we believe that *Quate* was merely following and attempting to explain the *Taylor/White* standard delineating symptomatic/asymptomatic asbestos-related conditions.

¶ 41 In *Quate,* the plaintiff alleged that he was exposed to asbestos-containing products manufactured, supplied, or distributed by American Standard, Inc. Mr. Quate's medical expert diagnosed Mr. Quate with asbestosis and asbestos-related pleural disease resulting in shortness of breath. Mr. Quate, however, had other medical problems including diabetes, hypertension, and a prostate condition. He underwent aortic valve replacement surgery in 2001, was treated for pneumonia and pleurisy in the past, and smoked on average one to two packs of cigarettes daily for about ten years before quitting 45 years ago.

¶ 42 Importantly, Mr. Quate testified that his shortness of breath *did not* prevent him from functioning normally and did not restrict his daily activities in any way.

¶ 43 The lower court granted American Standard's motion for summary judgment, declaring that Mr. Quate did not suffer from any "physical restriction" that could be attributed to his asbestos exposure. The Superior Court unanimously affirmed the grant of summary judgment.

¶ 44 At the beginning of the Superior Court's opinion, it declared:

[u]pon careful review, we hold that where a plaintiff suffers from a non-asbestos-related medical condition, the symptoms of which are consistent with medical conditions arising from exposure to asbestos, the existence of those non-asbestos-related medical conditions negate his ability to establish the necessary causal link between his symptoms and asbestos exposure.

*Quate,* 818 A.2d at 511.

¶ 45 It seems, then, if we were to look at these words in a broad manner and apply them to the current case, Mr. Cauthorn would be precluded from recovering for his asbestos-related injuries. Not only does Mr. Cauthorn suffer from all of the other ailments as Mr. Quate, but Mr. Cauthorn's smoking history is much more extensive than Mr. Quate's. Further, Mr. Cauthorn also has a variety of other medical problems that could possibly affect his breathing that were not suffered by Mr. Quate.

**2.** *Quate v. American Standard, Inc.* is a published opinion that was filed February 20, 2003. Appellant filed its first brief July 14, 2003, and appellee filed his in August of 2003. Yet, neither party cited to *Quate.* Further, oral arguments were made before this Court in early October of 2003. Again, neither party discussed *Quate.* We wholly realize how hard it is for attorneys to find all cases of import to an issue: their research must stop at some point. But this Court's duty to correctly apply the law to the facts is made much more difficult when such cases are not cited or discussed.

The above words, however, could carry a different meaning: that when a plaintiff suffers from breathlessness that does not affect his daily lifestyle, he cannot recover for his shortness of breath since the mere fact the plaintiff is short of breath could be due to all of his other non-asbestos-related medical conditions. This is because in *Quate,* the plaintiff himself testified that his daily activities were not impeded by his shortness of breath. Under the *Taylor/White* line of cases, this "impediment factor" was deemed necessary to establish a compensable asbestos-related injury.

¶ 46 Further, while we do not have the transcripts to the *Quate* case, the trial judge in that case determined that Mr. Quate did not establish the necessary causal link between asbestos exposure and his shortness of breath, thus granting American Standard's motion for summary judgment. *Id.* at 512. In Mr. Cauthorn's case, however, the jury *specifically found* that Mr. Cauthorn was injured by inhalation of asbestos. Our adversarial system allowed both sides to present their cases and attempt to sway the jury: Mr. Cauthorn presented evidence that he was injured by asbestos and John Crane presented evidence that Mr. Cauthorn was injured, not by inhalation of asbestos, but rather by his cigarette smoking and other related ailments. The jury heard all of this and found that Mr. Cauthorn was indeed injured by asbestos exposure and awarded him damages. *Quate* is thus not controlling in this case and, as was explained above, John Crane's motion for judgment n.o.v. was properly denied.

*Issue 3: Whether John Crane is entitled to judgment notwithstanding the verdict because no reasonable jury could find on the evidence presented in this case that its products were defective or caused any injury to plaintiff?*

¶ 47 Appellant presents two separate questions here. First it alleges that, even if Mr. Cauthorn was exposed to its product, Mr. Cauthorn did not prove that its product was defective and thus cannot recover. Second, it argues that Mr. Cauthorn never proved that he was exposed to its products at all. We will separate these issues in our discussion.

*A. Whether appellant is entitled to judgment notwithstanding the verdict because plaintiff failed to prove its products were defective.*

¶ 48 We agree with appellant that in an asbestos case where the plaintiff follows the "design defect" avenue of strict liability, the plaintiff must prove that the asbestos-containing product was defective. Mr. Cauthorn, however, did prove that John Crane's asbestos rope was defective.

¶ 49 Appellant's argument here is based primarily on the testimony of its industrial hygienist expert. Its asbestos rope was not defective, John Crane argues, because the expert testified that the rope emitted levels of respirable asbestos "so low it's difficult to measure. So it would be less than the limited detection."

¶ 50 Our Court was confronted with this argument in *Lonasco v. A–Best Products Co.* 757 A.2d 367 (Pa.Super.2000). Following the reasoning of *Lonasco,* appellant's claim must fail.

¶ 51 Here, as in *Lonasco,* the plaintiff's medical expert testified as to the effect each fiber of asbestos causes in the human body. In the current case, Mr. Cauthorn's medical expert testified to a "reasonable degree of medical certainty" that "[e]ach breath of air that contained asbestos fibers substantially contributed to the development of [Mr. Cauthorn's] diseases." Further, he testified: "[b]ecause any asbestos fiber will cause some degree

of injury . . . each fiber will have some small effect and it's the cumulative effect of all the different fibers."

¶ 52 As in *Lonasco,* Mr. Cauthorn testified that when he cut John Crane asbestos rope, white dust would become airborne from the product. This dust, Mr. Cauthorn declared, he would breathe in. At the end of the day, Mr. Cauthorn stated that he would be covered in white dust. Further, when this white dust was being blown off of him, Mr. Cauthorn testified that the dust would recirculate causing him to breathe in even more dust.

■ ¶ 53 As to the testimony of John Crane's industrial hygienist concerning the levels of asbestos emitted from the rope, "a jury can believe any part of a witness' testimony that they choose, and may disregard any portion of the testimony that they disbelieve." *Martin v. Evans,* 551 Pa. 496, 505, 711 A.2d 458, 463 (1998).

¶ 54 Based on this evidence and following the reasoning of *Lonasco,* we cannot say that John Crane is entitled to judgment n.o.v. on the basis that Mr. Cauthorn did not prove its product was defective. The trial judge thus ruled correctly in denying this motion.

*B. Whether appellant is entitled to judgment notwithstanding the verdict because plaintiff failed to establish product identification.*

■ ¶ 55 To establish product identification in an asbestos case, the plaintiff must prove that he inhaled asbestos fibers from that particular manufacturer's product. *Lilley v. Johns–Manville Corp.,* 408 Pa.Super. 83, 596 A.2d 203, 207 (1991). Thus, we have stated: "[a] plaintiff must establish more than the presence of asbestos in the workplace. He must prove that he worked in the vicinity of the product's use", and that his contact with that particular product "was of such a nature as to

raise a reasonable inference that he inhaled asbestos fibers that emanated from it." *Andaloro v. Armstrong World Ind.,* 799 A.2d 71, 86 (Pa.Super.2002).

■ ¶ 56 Viewing the evidence in the light most favorable to Mr. Cauthorn, he did just that. As stated above, Mr. Cauthorn testified that he worked consistently with two types of asbestos rope: John Crane and PARS. He knew this because he saw the names of both corporations on the packages of rope with the word "asbestos" printed on the packages. With respect to the John Crane rope, he described it as packaged in "boxes and it was on rolls, spools that you roll off, and it was in bags also." This rope was white, not slick, pliable, and had to be cut with a knife. It was when he cut the rope with his knife that he would see the "dust" coming from the rope. This dust he would then breathe in.

¶ 57 On cross-examination it was elicited from the plaintiff that, at any given time, he did not know whether PARS or John Crane supplied the rope he was using. We, however, do not expect a plaintiff to come in with a journal describing what asbestos product he used on a given day. Mr. Cauthorn's description of the asbestos rope was specific and demonstrated that he worked consistently with John Crane rope. This testimony was "of such a nature as to raise a reasonable inference that he inhaled asbestos fibers that emanated from" John Crane's asbestos rope.

¶ 58 While appellant cites to the testimony of George McKillop to establish that its rope did not have the particular composition that Mr. Cauthorn testified it did, such oral testimony seems to have been rejected by the jury. Such is the prerogative of the jury. *Commonwealth v. Harper,* 485 Pa. 572, 576–77, 403 A.2d 536, 538–39 (1979).

¶ 59 Thus, it cannot be said that "no two reasonable minds could disagree that the outcome should have been rendered in favor of [John Crane]." *Moure v. Raeuchle,* 529 Pa. 394, 402, 604 A.2d 1003, 1007 (1992).

¶ 60 Order AFFIRMED.

¶ 61 BECK, J., Concurs in the Result.