**Frederick S. and Lynn SUMMERS, h/w, Appellants**

v.

**CERTAINTEED CORPORATION and Union Carbide Corporation, Appellees.**

**Richard Nybeck, Appellant**

v.

**Union Carbide Corporation, Appellee.**

Superior Court of Pennsylvania.

Argued Mar. 9, 2005.

Filed Aug. 25, 2005.

Before: HUDOCK, FORD ELLIOTT, JOYCE,* ORIE MELVIN, KLEIN, BENDER, BOWES, GANTMAN and PANELLA, JJ.

**PER CURIAM ORDER**

The Court, being evenly divided, the Order of the Court of Common Pleas is affirmed.

Opinion in Support of Affirmance by KLEIN, J. Judges HUDOCK and GANTMAN join; Judge ORIE MELVIN concurs in the result.

Opinion in Support of Reversal by PANELLA, J. Judges FORD ELLIOTT, BENDER and BOWES join.

Judge JOYCE recused from participation.

OPINION IN SUPPORT OF AFFIRMANCE BY KLEIN, J.

¶ 1 Plaintiffs Frederick Summers [1] and Richard Nybeck appeal from the or-

---

* Judge Joyce recused from participation.

1. Frederick Summers' wife, Lynn Summers, is also a plaintiff in a loss of consortium claim. For convenience, Frederick S. Summers and Richard Nybeck will be referred to collectively as "plaintiffs."

ders of the Honorable Norman Ackerman [2] granting summary judgment in favor of the asbestos defendants and against them in their claims for asbestos-related injuries. Judge Ackerman held that because the plaintiffs both had significant lung diseases from smoking and other causes, it was impossible to find that asbestos exposure caused any functional impairment or disability, and granted summary judgment. We agree and affirm.[3]

¶ 2 The present rules for recovery in asbestos cases were established first by this Court in *Giffear v. Johns–Manville Corp.*, 429 Pa.Super. 327, 632 A.2d 880 (1993), and affirmed by the Pennsylvania Supreme Court in *Simmons v. Pacor*, 543 Pa. 664, 674 A.2d 232 (1996). The *Giffear* principle is that because a plaintiff can return to court if a physical impairment later develops from an asbestos condition, the mere showing that there have been changes due to asbestos exposure absent functional impairment or disability does not trigger recovery. The impact of *Giffear* is that when faced with a flood of claims of injury from asbestos exposure, the trial courts can concentrate on the people who are presently sick from asbestos and defer the cases of those persons who so far have no illness or impairment from their asbestos exposure.

¶ 3 Although the technical result is that summary judgment has been granted, the determination is that there is no *presently* compensable asbestos related disease. However, if asbestos exposure later develops into a diagnosable asbestos-related injury, plaintiffs such as Mr. Nybeck and Mr. Summers can return to court.

¶ 4 This somewhat unique procedure has evolved in the relatively unique body of cases involving asbestos-related injury claims. Asbestos-related disease has a long latency period and often first manifests itself in diagnosable but asymptomatic x-ray findings. Given the peculiarities of asbestos-related disease and the volume of asbestos-related cases filed this procedural solution, while unorthodox, is highly practical. Therefore, this decision is applicable only to asbestos-related cases and not to summary judgment cases in general.

¶ 5 Essentially, plaintiffs ask this Court *en banc* to overrule the panel decision in *Quate v. American Standard, Inc.*, 818 A.2d 510 (Pa.Super.2003). In *Quate*, this Court affirmed the trial court's grant of summary judgment in favor of defendants when a plaintiff's "multiple medical conditions made it impossible to causally relate his shortness of breath to any particular asbestos-related medical condition." We find that the *Quate* Court thoroughly analyzed the *"Giffear"* line of cases and reached the proper decision consistent with the Pennsylvania Supreme Court's reasoning in *Simmons.*

¶ 6 Like the present plaintiffs, Mr. Quate "suffered from several medical conditions that could account for his breathlessness." As Judge Johnson said:

In light of Quate's testimony and medical history, we are constrained to conclude that the record does not substantiate the existence of any *discernible* physical symptoms or functional impairment *as a result of Quate's asbestos-related conditions* such as to raise a

---

**2.** Judge Ackerman is the supervising judge of the Philadelphia County complex litigation program, which includes asbestos cases.

**3.** This Court will only overturn an order granting summary judgment where the trial

court has "committed an error of law or abused its discretion." *Wilson v. A.P. Green Industries, Inc.*, 807 A.2d 922, 924 (Pa.Super.2002).

question of material fact. [Emphasis supplied.]

*Quate*, 818 A.2d at 514.

¶ 7 As this Court said in *Giffear*, "It would hardly be fair to compensate [Mr. Giffear] for something that has yet to manifest itself into a functional impairment. If and when such impairment does occur, Mr. Giffear may then bring an action for damages. Until that time, however, he is without a legally cognizable claim; there is, at this point, no legal injury." 632 A.2d at 888.

¶ 8 In *Taylor v. Owens–Corning Fiberglas Corp.*, 446 Pa.Super. 174, 666 A.2d 681, 687 n. 2 (1995), this Court, noting that all of the plaintiffs were smokers, pointed out:

Shortness of breath alone is not a compensable injury under *Giffear v. Johns–Manville Corp., supra.*, because it is not a discernible physical symptom, a functional impairment, or a disability. It is common knowledge that breathlessness is also associated with any number of non-asbestos-related ailments including lung cancer, excessive smoking, heart disease, obesity, asthma, emphysema and allergic reactions.

¶ 9 In ascertaining whether Judge Ackerman abused his discretion, it is not enough to blindly follow the language of the experts hired by plaintiffs. It is not the *expert* who makes the ultimate decision but the *judge* by reviewing the entire record. In this case, the experienced judge reviewing the record is not a judge that needs an explanation on the record of each element of the asbestos litigation jargon. A judge experienced in the asbestos litigation will know that a "PFT" is a pulmonary function test, and will know the difference between an obstructive (cigarette caused) disease and a restrictive (asbestos caused) disease without having it spelled out in each expert report. It is true that those unfamiliar with asbestos cases might have

difficulty determining whether a standard phrase a doctor retained in innumerable asbestos cases is supported by the record or not. However, a judge supervising the asbestos litigation will develop expertise in understanding the language so that he or she will be able to understand the record without the need to define the terms in every individual case.

¶ 10 In all kinds of litigation, lawyers and judges develop expertise and knowledge of the vernacular used in the field and the effect of that language. For example, a judge in personal injury litigation evaluating an expert report will know that when a doctor finds "spasm," that is an objective symptom and not dependent on believing what a patient says. In family law, "marital property" has a special meaning not fully understood by many lawyers, but known to family court judges and lawyers. Criminal lawyers in Pennsylvania all know what is meant by "PCRA" or "ARD," although others not familiar with criminal law might need it explained. The same thing is true in asbestos litigation. Lawyers and judges dealing with the medical terms every day soon come to know them and their effect and meaning. In evaluating whether a trial judge abused his or her discretion, we must recognize that the judge will have specialized knowledge of the terms involved in the case in general and expert reports in particular.

¶ 11 With respect to these plaintiffs, we do not believe that Judge Ackerman has abused his discretion but instead believe he made a reasoned judgment based on his evaluation of the *entire* record.

## I. Frederick S. Summers

■ ¶ 12 With respect to Mr. Summers, the plaintiff's expert witness, Jonathan L. Gelfand, M.D., only says that Mr. Sum-

mers has "asbestos pleural disease" which has been stable for a number of years. However, although Dr. Gelfand uses the term "pleural disease," in asbestos litigation that term is synonymous with "pleural thickening," and normally causes no symptoms. As noted in *Simmons*, "asymptomatic pleural thickening is not a compensable injury which gives rise to a cause of action." 674 A.2d at 232.

¶ 13 At the same time, Mr. Summers has significant obstructive disease from his long history of cigarette smoking. Just as in *Quate*, Judge Ackerman found that because pleural thickening is asymptomatic and due to Mr. Summers' litany of other problems, it was impossible to say that any discernable symptoms were attributable to asbestos.

¶ 14 In his report, Dr. Gelfand lists the medical problems from which Mr. Summers suffers *other* than from asbestos in light of his significant smoking history and other problems:

  (a) he was 64 years old at the time;

  (b) he was 5′8″ tall and weighted 235 pounds;

  (c) he had a 40–pack year cigarette smoking history;[4]

  (d) he had moderately severe, chronic obstructive lung disease [which all in asbestos litigation know is a disease that results from smoking, not asbestos exposure]; and

  (e) he had asthma.

Gelfand Report, 6/25/03 at 2.

¶ 15 Dr. Gelfand's report in this case uses legal terminology to attempt to reach the ultimate issue to be decided by a jury at trial and, on summary judgment, by the court. He uses the "magic words" as follows:

In my opinion, to a reasonable degree of medical certainty, exposure to asbestos in the workplace is the cause of the asbestos pleural disease and is a substantial contributing factor to his diffusion abnormality and to his dyspnea on exertion. Each and every exposure to asbestos has been a substantial contributing factor to the abnormalities noted.

*Id.* at 3.

¶ 16 Just because a hired expert makes a legal conclusion does not mean that a trial judge has to adopt it if it is not supported by the record and is devoid of common sense. For example, Dr. Gelfand used the phrase, "Each and every exposure to asbestos has been a **substantial** contributing factor to the abnormalities noted." However, suppose an expert said that if one took a bucket of water and dumped it in the ocean, that was a "substantial contributing factor" to the size of the ocean. Dr. Gelfand's statement saying every breath is a "substantial contributing factor" is not accurate. If someone walks past a mechanic changing brakes, he or she is exposed to asbestos. If that person worked for thirty years at an asbestos factory making lagging, it can hardly be said that the one whiff of the asbestos from the brakes is a "substantial" factor in causing disease.

¶ 17 For a plaintiff to survive summary judgment, the conclusion of the expert has to be supported by the record. Those familiar with the terms used in the asbestos litigation can review the report and the record and ascertain whether there is anything to support an expert's conclusion.

¶ 18 First, pleural thickening or "pleural disease" does not cause symptoms except in rare cases of entrapment of the lung,

---

4. A "pack year" history is the number of packs a day of cigarettes smoked times the number of years smoked. For example, a 40 pack year history could result from one pack a day for 40 years, or from 2 packs a day for 20 years.

clearly not present here. That is what was said by the Pennsylvania Supreme Court in *Simmons* and by this Court repeatedly. Mr. Summers' x-ray report attached to Dr. Gelfand's report shows **no** sign of any asbestosis, or disease inside the body of the lung. The pulmonary function tests attached, as described by Dr. Gelfand, reveal "moderately severe airflow obstruction, moderate air trapping and severe reduction in diffusion." While some may need a translation of these terms, a judge experienced in asbestos litigation such as Judge Ackerman understands them. He knows that a diffusion reduction is a general problem with breathing, not specific to either smoking or asbestos exposure. He, as everyone else with experience in the litigation, knows that "moderately severe airflow obstruction," together with air trapping, is a sure sign of the kind of "obstructive" disease that results from smoking, not asbestos exposure. Asbestos disease is a "restrictive," not "obstructive," disease.

¶ 19 Those familiar with asbestos litigation know that a 43% of predicted figure for FEV1 (a measure of an obstructive disease) supports Dr. Gelfand's finding of moderately severe obstructive disease. Likewise, when the TLC (total lung capacity) is 81% of predicted it is known that that is within the normal range. Further, when the RV (residual volume) is 140% of predicted, this shows the lungs are larger than expected, which indicates a smoking disease, rather than being smaller than expected, which is what happens in a restrictive disease such as asbestosis.

¶ 20 However, even without the knowledge of the pulmonary function tests, the Supreme Court and this Court have repeatedly said that absent a showing of anything more than pleural thickening, a plaintiff cannot show any discernible physical symptoms or functional impairment that would justify recovery.

¶ 21 Mr. Summer's circumstances are almost identical to those in *Quate, supra.* In that case, this Court rejected similar testimony from Dr. Gelfand's partner, Dr. Stanley Altschuler. 818 A.2d at 514. The *Quate* Court cited *Taylor v. Owens–Corning Fiberglas Corp.*, 446 Pa.Super. 174, 666 A.2d 681, 687 (1995), for the proposition that shortness of breath is not compensable in light of the facts that breathlessness is also associated with numerous non-asbestos related ailments, including lung cancer, excessive cigarette smoking, heart disease, asthma, emphysema and allergic reactions. Mr. Summers has three of those conditions—excessive cigarette smoking, asthma, emphysema (a cause of chronic obstructive lung disease).

¶ 22 The *Quate* Court went on to hold that the trial judge, Judge Alan Tereshko, who preceded Judge Ackerman in supervising the asbestos litigation, was correct when he said that Mr. Quate's long list of medical ailments made it impossible to causally relate Mr. Quate's shortness of breath to any particular medical condition. The same is true in this case. Even were there any discernable symptoms from asbestos, they could not be distinguished from other causes of shortness of breath. If Mr. Summers develops a discernable asbestos-related disease in the future, such as mesothelioma, lung cancer, or symptomatic asbestosis, he can return to court. Presently, however, he cannot show that he has a compensable asbestos condition.

**II. Richard Nybeck**

¶ 23 The situation with Mr. Nybeck is somewhat different, but essentially the same principles apply. While Mr. Nybeck has some x-ray findings of mild fibrosis in the parenchyma [body] of the lung as well as pleural thickening, his non-asbestos

lung problem is considerably worse than Mr. Summers'.

¶ 24 Upon examination, Dr. Gelfand, rather than diagnosing "moderately severe" obstruction, diagnosed Mr. Nybeck with **severe** obstruction. While Dr. Gelfand found interstitial lung disease, he did not quantify it.[5] Once again, he usurped the role of the fact finder by defining "substantial" his way and saying "Each and every exposure to asbestos has been a substantial contributing factor to the abnormalities noted."

¶ 25 Moreover, the only functional impairment reported by Dr. Gelfand is dyspnea (shortness of breath), which, on its own, is not a compensable injury due to the fact that it is not disabling and is associated with so many other non-asbestos related ailments. *See Taylor, supra; Lonasco v. A–Best,* 757 A.2d 367 (Pa.Super.2000).

¶ 26 Again, while unnecessary to the finding, the spirometry of the pulmonary function tests which show obstruction are generally one-third of what would be predicted or lower, justifying the diagnosis of **severe** obstructive disease. This is not unexpected, since Mr. Nybeck has an **80 pack year**[6] smoking history. The lung volumes are greater than predicted, which indicate that there is no significant restrictive element to Mr. Nybeck's problems.

¶ 27 Here, the problems from a long smoking history are very great compared with the problems from asbestos exposure.

Dr. Gelfand's report does not say that there are any discernable symptoms from asbestos exposure to distinguish them from the major breathing problems that result from Mr. Nybeck's severe obstructive disease. Judge Ackerman did not abuse his discretion, after viewing all the evidence in a light most favorable to the plaintiff, by finding the plaintiff could not meet his burden of proof. We agree with Judge Ackerman when he said:

> Dr. Gelfand's reports chronicle other medical conditions maintained by the plaintiffs, including severe chronic obstructive lung disease, asthma, and a history of cigarette smoking all of which have been associated with breathlessness. It is impossible for this Court to causally relate plaintiffs' shortness of breath to any particular medical condition that plaintiffs have or any physical restriction that they may have. Therefore, pursuant to the line of cases evolving in the field of asbestos litigation, specifically, *Giffear* and *Quate,* the Pennsylvania Superior Court has consistently held that asymptomatic asbestos-related diseases do not give rise to a compensable injury where the claimant does not suffer from a discernable physical symptom, a functional impairment or disability causally related to asbestos exposure.

Trial Court opinion, 12/29/03 at 4.

\* \* \* \* \* \*

¶ 28 Neither of the plaintiffs can currently meet his burden of demonstrating

---

5. His partner, Dr. Altshuler, read the x-rays for the body of the lung as "1/1." The first number is the final diagnosis, and the second a diagnosis considered and then rejected. A "1" is the lowest positive x-ray finding for asbestos. While a "1/1" is more severe than a "1/0," it is less severe than a "1/2." Therefore, the 1/1 means the doctor was certain, but still found only the lowest grade of asbestosis in the lung parenchyma.

6. A "pack year" history is the number of packs a day of cigarettes smoked times the number of years smoked. An 80 pack year history could result from two packs a day for 40 years, or from 3 packs a day for 26–2/3rds years, or some other combination of packs per year and years.

that asbestos exposure created impairment or disability beyond the severe breathing problems he has from smoking and other ailments. At this time, summary judgment was properly granted.

¶ 29 Orders affirmed.

¶ 30 The Court, being equally divided, affirms the Orders of the Court below.

¶ 31 HUDOCK and GANTMAN, JJ., join; ORIE MELVIN, J., concurs in the result.

¶ 32 PANELLA, J., files an Opinion in Support of Reversal, in which FORD ELLIOTT, BENDER and BOWES, JJ., join.

¶ 33 JOYCE, J., did not participate in this decision.

## OPINION IN SUPPORT OF REVERSAL BY PANELLA, J.:

¶ 1 After a thorough review of the record and all applicable case law, I conclude that *Cauthorn v. Owens Corning Fiberglas Corp.*, 840 A.2d 1028 (Pa.Super.2004) is the most comprehensive discussion of the law regarding the compensability of allegedly asbestos related injuries. As I conclude that summary judgment was inappropriate under *Cauthorn,* I respectfully dissent.

¶ 2 In *Cauthorn,* this Court recognized the existence of two poorly integrated lines of precedent on the issue of compensability in asbestos litigation. *Cauthorn,* 840 A.2d at 1035–1036. *Cauthorn* recognized that pursuant to one line of cases, all that had been required for compensability was a showing of the following: (1) an asbestos related condition; (2) shortness of breath; (3) a causal connection linking the asbestos related condition to the shortness of breath. *Id.* at 1036. However, *Cauthorn* also acknowledged that a separate line of cases had required more than mere shortness of breath. *Id.* at 1035. These cases required that there be "discernible physical symptoms or functional impairment" in

order for an allegedly asbestos related injury to be compensable. *Id.*

¶ 3 Finally, *Cauthorn* addressed the applicability of *Quate v. American Standard, Inc.*, 818 A.2d 510 (Pa.Super.2003). The Court noted that *Quate,* if read expansively, could constitute yet a third test for compensability. The Court in *Quate* affirmed the grant of summary judgment against an asbestos plaintiff. Some of the prefatory language utilized in *Quate* could be read to indicate that the presence of any other possible cause of a plaintiff's shortness of breath would act to completely preclude such a plaintiff from recovery in asbestos litigation. However, when the Court turned to applying the law to the facts of the case, it stated that

> [t]his court has consistently concluded that asymptomatic asbestos-related diseases do not give rise to a compensable injury where the claimant does not suffer from a discernible physical symptom, *a functional impairment,* or a disability.

*Quate,* 818 A.2d at 513 (emphasis added). The Court proceeded to note that the plaintiff's own testimony was that his medical conditions "do not limit his ability to attend to his daily activities." *Id.* at 514. As a result, the Court was "constrained to conclude that the record does not substantiate the existence of any discernible physical symptoms or functional impairment as a result of [plaintiff's] asbestos-related conditions such as to raise a question of material fact." *Id.*

¶ 4 By focusing on the actual analysis performed in *Quate; Cauthorn* wisely eschewed introducing further confusion into the issue of compensability in asbestos litigation. *Cauthorn,* 840 A.2d at 1037. Accordingly, *Cauthorn* correctly categorized *Quate* as falling in the line of cases that had required evidence of discernible symptoms or functional impairment. *Id.*

¶ 5 I conclude that this Court's exceedingly well-written opinion in *Cauthorn* rep-

resents the true state of the law in this complex area. *Dictum* in *Quate* cannot be expanded beyond the scope of the facts before that Court, especially when to do so would represent an enormous re-working of the fundamental law at issue. Rather, as in *Cauthorn,* I read *Quate* as merely an extension of the line of cases that required discernible symptoms or functional impairment. Therefore, the most exacting standard required by this Court has been the requirement that a plaintiff establish discernible symptoms or functional impairment in order to present a *prima facie* case. I express no opinion on whether this standard or the less stringent standard requiring only shortness of breath is the proper standard, as I conclude that the plaintiffs in the present cases have satisfied both.

¶ 6 Applying the more stringent standard to the cases *sub judice,* it is clear that summary judgment was not appropriate. The trial court granted summary judgment to asbestos defendants after concluding that plaintiffs had failed to present evidence of record sufficient to establish the existence of compensable asbestos-related injury. Trial Court Opinion, 12/29/2003, at 1. In reviewing the grant of summary judgment on such grounds, we must view the record in the light most favorable to the non-moving party. *Rudy v. A–Best Products Co.,* 870 A.2d 330, 333 (Pa.Super.2005). Furthermore, all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Id.*

### Plaintiff Summers

¶ 7 Plaintiff Summers presented the expert opinion of Dr. Jonathan Gelfand, M.D., a board-certified pulmonary physician. Dr. Gelfand diagnosed Summers with asbestos-related pleural disease which was a cause of Summers's shortness of breath. Importantly, Summers also presented evidence of record capable of estab- lishing that he suffers from functional impairment. In his deposition testimony, Summers testified that he no longer could load or unload his truck, nor could he complete his service calls. Summers was forced to abandon his business because of this impairment. Furthermore, Summers also testified that he could no longer walk, jog, or fish for recreation as he had previously. Viewing this evidence in a light most favorable to Summers, as the non-moving party, it is clear that he has adduced sufficient evidence to survive a motion for summary judgment. I would therefore reverse the trial court's order and remand for further proceedings.

### Plaintiff Nybeck

¶ 8 Dr. Gelfand diagnosed Nybeck as suffering from asbestosis and asbestos-related bilateral pleural thickening. Dr. Gelfand opined that these two conditions were factual causes of Nybeck's shortness of breath. Nybeck also presented evidence capable of establishing a functional impairment. At his deposition, Nybeck testified that he could only walk approximately one block before becoming winded. Further, he could only ascend halfway up the steps leading to the elevated railway station. This shortness of breath caused Nybeck to retire, and also curtailed his ability to engage in recreational fishing. Viewing this evidence in a light most favorable to Nybeck, as the non-moving party, it is clear that he also has adduced sufficient evidence to survive a motion for summary judgment.

¶ 9 Therefore in both cases, I would reverse the trial court's order and remand for further proceedings.

¶ 10 FORD ELLIOTT, BENDER and BOWES, JJ., join.